# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HOME GAMBLING NETWORK, INC., a Nevada corporation; MEL MOLNICK, an individual | 2:05-CV-00610-KJD-LRL |
| Plaintiffs, | **ORDER** |
| v. | |
| BETINTERNET.com, PLC, *et al.*, | |
| Defendants. | |

Presently before the Court is Defendant Betinternet.com, PLC's Motion to Dismiss (#74). Plaintiffs filed a response in opposition (#78) and a Motion to Conduct Discovery (#79) to which Defendant replied (#80).

**I. Background**

Betinternet.com, PLC ("Betinternet") is a United Kingdom corporation incorporated in the Isle of Man.  Betinternet's business consists of a website which offers sports betting as well as online casino games and lottery betting.  Link2Bet.com is a service provider, which is used by major United States race tracks, licensed and regulated by the Isle of Man Gambling Control Commissioners that accepts and retransmits information assisting in the placement of wagers. Link2Bet.com is wholly owned by Betinternet.  Betinternet announced in its 2005 annual report that it plans to begin accepting wagers from US customers.  However, as of the time of the filing of its Motion to Dismiss, Betinternet had yet to begin accepting wagers from US customers.  Euro

Off-Track Limited Partnership ("Euro Off-Track"), initially a 50-50 partnership with US Off-Track, LLC (a Delaware limited liability company), is now wholly owned by Betinternet. Euro Off-Track continues to do business with US Off-Track providing a service allowing customers from around the world to bet directly into the U.S. totes on greyhound, thoroughbred, and harness racing events.

On March 6, 2005, Mel Molnick using his home computer in Henderson, Nevada, established an internet connection with Betinternet.com's Live Casino website via a third-party's computer in Ontario, Canada. Using that person's financial information, Molnick transferred funds into a Betinternet wagering account. Molnick then used those funds to place a bet. On May 2, 2005, Molnick reestablished a remotely accessed internet connection with Betinternet's Live Casino website, but was unable to access the account or process any additional bets. On May 16, 2005, Plaintiffs filed the present action. Molnick claims that Defendant has infringed on his method patent for remotely participating in live casino games. Defendant Betinternet.com, PLC moves to dismiss for lack of personal jurisdiction.

**II. Standard for Asserting Personal Jurisdiction**

To establish personal jurisdiction over Defendant in Nevada, Plaintiffs have the burden of showing that: (1) the Nevada long-arm jurisdiction statute confers such jurisdiction; and (2) "that the exercise of jurisdiction comports with the constitutional principles of due process." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). The Nevada long-arm statute confers jurisdiction "on any basis not inconsistent with the constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065 (2006). This statute has been interpreted to make the jurisdiction of Nevada courts coextensive with the limits of federal due process. Meyers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001).

To comport with constitutional principles of due process, personal jurisdiction exists only where a party has minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

1  Washington, 326 U.S. 310, 316 (1945). These requirements "give a degree of predictability to the
2  legal system that allow potential defendants to structure their primary conduct with some
3  minimum assurance as to where that conduct will not render them liable to suit." World-Wide
4  Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
5       Personal jurisdiction may be either general or specific. See Panavision Int'l, L.P. v.
6  Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1990). General jurisdiction exists when the defendant
7  engages in "continuous and systematic general business contacts that approximate physical
8  presence in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th
9  Cir. 2004). Specific jurisdiction may be asserted "if the defendant purposefully directed his
10 activities at residents of the forum, and the litigation results from alleged injuries that arise out of
11 or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (internal
12 quotations omitted).
13      A. General Jurisdiction
14      The Court begins with an analysis of whether Defendant's contacts with Nevada are
15 sufficient to confer general jurisdiction. "The standard for establishing general jurisdiction is
16 'fairly high....'" Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir.
17 2000) (quoting Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986)). The contacts with
18 the forum state must be of a sort that "approximate physical presence." Id. "Factors to be taken
19 into consideration are whether the defendant makes sales, solicits or engages in business in the
20 state, serves the state's markets, designates an agent for service of process, holds a license, or is
21 incorporated there." Id. A court focuses upon the "economic reality" of the defendant's activities
22 rather than a mechanical checklist. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir.
23 1984). Even if substantial, or continuous and systematic contacts exist, the assertion of general
24 jurisdiction must be reasonable. See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d
25 848, 852-53 (9th Cir. 1993).
26

In applying the "substantial" or "continuous and systematic" contacts test, courts have focused primarily on two areas.  First, they look for some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation.  See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) (finding general jurisdiction when president of a Philippines-based corporation maintained an office, kept company files, held director meetings, distributed salaries, and conducted other company business in the forum state). In addition, courts have looked at whether the company has engaged in active solicitation toward and participation in the state's markets, i.e., the economic reality of the defendant's activities in the state.  See Theo. H. Davies & Co. v. Republic of the Marshall Islands, 174 F.3d 969, 974-75 (9th Cir. 1998) (finding general jurisdiction over two foreign corporations engaged in substantial commercial activity in the United States, including purchase and solicitation of bids for generators in Hawaii).

Plaintiffs assert Betinternet is subject to general jurisdiction in Nevada because it actively engages in business operations within this forum.  Plaintiffs point out that a subsidiary of Betinternet, Euro Off-Track, does business with US Off-Track, LLC, a Delaware limited liability company with a call center in Nevada.  Plaintiffs also allege that Betinternet owns and operates Link2Bet.com, a service provider, licensed and regulated by the Isle of Man Gambling Control Commissioners, that accepts and retransmits information assisting in the placement of wagers, which is used by major United States race tracks.

"It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes."  Harris Rutsky & Co. v. Ins. Serv. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).  However, there is an exception to this rule if the subsidiary is either the parent's alter ego, or acts as a general agent of the parent.  Id.  It is unnecessary to determine whether Euro Off-Track serves as either an alter ego or general agent of Defendant because the subsidiary does not have contacts with Nevada.  US Off-Track, LLC, a company it does business with has contacts with Nevada.  Those contacts

cannot be imputed to Euro Off-Track or Defendant.  Additionally, Euro Off-Track specifically states that its services in cooperation with US Off-Track are provided to non-United States customers.

Plaintiffs assertion that Defendant's ownership of Link2Bet.com establishes general jurisdiction in this forum is similarly without merit.  In order to place a wager on Link2Bet.com, an individual must create an account by providing personal information including, among other things, that person's address.  At the top of the registration screen, it says that due to "US State, Inter State and Track restrictions, the website is unable to accept accounts from...Nevada."

Several Ninth Circuit cases have addressed the issue of whether general jurisdiction may be asserted over a company doing business on the internet.  The case most relevant to the instant action, Bancroft, held that the defendant's contacts were insufficient to confer general jurisdiction.  In addition to not being registered or licensed to do business in California, the Defendant in Bancroft did not pay taxes or maintain a bank account in California, and "target[ed] no print, television, or radio advertising toward California." 223 F.3d at 1086.  In addition, the court found that the defendant's website was "passive, i.e., consumers cannot use it to make purchases." Id.  Finally, the court found that neither the defendant's "occasional, unsolicited sales of tournament tickets and merchandise to California residents" nor a few licensing agreements that the defendant had made with California vendors were sufficient to create general jurisdiction, as these "constitute doing business with California but do not constitute doing business in California." Id.

There is even less contact between Defendant and the state of Nevada in this case, than there was between the defendant and California in the Bancroft case.  Betinternet is not registered or licensed to do business in Nevada, does not pay taxes in Nevada, and targets no advertising to Nevada residents.  Unlike the defendant in Bancroft, Defendant has no licensing agreements or distributors in Nevada.  The only noticeable distinction is that Betinternet has an interactive rather than a passive website, and Molnick was able to place a bet from Nevada by disguising himself as a Canadian, utilizing a Canadian's computer and financial identity.  Betinternet does have a system

5

1  in place to restrict access to people within the United States, and staff to search for fraudulent
2  identities.  Due to this system, Molnick was unable to access his account when he returned to the
3  website less than two months after his initial registration.
4       Given the high standard the Ninth Circuit has set for general jurisdiction, the question of
5  general jurisdiction is not even close in this case.  See Gator.com Corp. v. L.L. Bean, Inc., 341
6  F.3d 1072, 1078 (9th Cir. 2003).  Defendant has none of the continuous and systematic contacts
7  with Nevada that show a substantial pattern of business relations conferring general jurisdiction.
8  See Davies, 174 F.3d at 975.  Since this Court cannot exercise general jurisdiction, the only
9  question left to resolve is whether the Court may exercise specific jurisdiction.
10      B. Specific Jurisdiction
11      A district court uses a three-part test to determine whether it may exercise specific
12 jurisdiction over a nonresident defendant: (1) The nonresident defendant must purposefully direct
13 its activities at the forum state or consummate some transaction within the forum state; (2) the
14 claim must arise out of or relate to defendant's forum related activities; and (3) the exercise of
15 jurisdiction must be reasonable comporting with fair play and substantial justice.  See
16 Schwarzenegger, 374 F.3d at 802.  Plaintiffs argue that jurisdiction must be found because
17 Betinternet purposefully directed its activities toward Nevada and consummated transactions in the
18 forum, by accepting Molnick's wager.  Plaintiffs also argue that Betinternet's announcement in its
19 2005 annual report that it plans to begin accepting wagers from US customers, subjects it to
20 personal jurisdiction.
21      The Ninth Circuit has held in the context of a trademark infringement action that when the
22 operator of a passive website conducted no act in the forum state other than the use of the
23 trademark, the court would not exercise specific jurisdiction, because doing so would result in
24 "every complaint arising out of alleged trademark infringement" automatically resulting "in
25 personal jurisdiction wherever the plaintiff's principal place of business is located."  Cybersell,
26 Inc. v. Cybersell, Inc., 130 F.3d 414, 420 (9th Cir. 1997).  The difference in this case, other than

6

the obvious difference between patent and trademark infringement, is that Defendant's website is not passive. However, Molnick was able to place one wager only after deceiving Defendant's website using a Canadian's computer and financial identity. In other words, the placement of the wager was not the result of Defendant directing its activity in a substantial way to the forum state. Instead Molnick directed his activity towards Defendant's forum.

In addition, Defendant's plans to begin accepting wagers from the US is insufficient to establish personal jurisdiction over Betinternet in this case. Jurisdiction is not based on the likelihood of some future contact with the forum, but "the defendant's conduct and connection with the forum state...such that he should reasonably anticipate being haled into court there." Worldwide, 444 U.S. at 297. Defendant owns no property in Nevada, has no employees in the state, and continues to block wagers from Nevada residents, as well as all residents of the United States. Defendant's future plans to cease blocking wagers from the US does not establish current personal jurisdiction in Nevada.

This Court finds no action on Defendant's part that purposefully avails Defendant of the privilege of conducting activities in this forum, thereby invoking its benefits and protections. Because Plaintiffs have not met their burden of demonstrating purposeful availment in this forum, the Court must grant Defendant Betinternet's motion to dismiss, as this Court lacks personal jurisdiction over Defendant.

**III. Motion for Discovery**

Courts have a significant amount of leeway in deciding whether parties may conduct discovery relating to jurisdictional issues while a motion to dismiss is pending. "It is clear that the question of whether to allow discovery is generally within the discretion of the trial judge." Am. W. Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989). It is not an abuse of judicial discretion to deny discovery before dismissing on jurisdictional grounds "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977). The

Court finds that even when taking the allegations in the light most favorable to Plaintiffs, they have not demonstrated the necessary requirements to exercise personal jurisdiction over Defendant. Therefore, it is clear that further discovery would not demonstrate sufficient facts to constitute a basis for jurisdiction. Plaintiffs' motion for discovery is denied.

**IV. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#74) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Discovery (#79) is **DENIED**.

DATED this 26th day of June, 2006.

_____
Kent J. Dawson
United States District Judge