IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

HOME GAMBLING NETWORK, INC., et al.,

Plaintiffs,

vs.

CHRIS PICHE, et al.,

Defendants.

2:05-cv-00610-DAE-VCF

ORDER: (1) VACATING THE MAGISTRATE'S REPORT AND RECOMMENDATION AND (2) REMANDING THE MATTER TO THE MAGISTRATE FOR A NEW EVIDENTIARY HEARING

On March 23, 2012, the Court heard oral arguments on the CWC Defendants' Objection to the Magistrate's Report and Recommendation. (Doc. # 265.) Sid Leach, Esq., and Craig Marquiz, Esq., appeared at the hearing on behalf of Plaintiffs; Jacob Reynolds, Esq., appeared at the hearing on behalf of the CWC Defendants. For the reasons provided herein, the Court **VACATES** the Magistrate's Report and Recommendation (doc. # 262) and **REMANDS** the matter to the Magistrate Judge for a new evidentiary hearing.

BACKGROUND

On September 1, 1998, the United States Patent and Trademark Office issued Patent No. 5,800,268, entitled "Method of Participating in a Live Casino

Game from a Remote Location" ("Method Patent") to inventor Mel Molnick, who subsequently assigned all rights in the Method Patent to Home Gambling Network ("HGN"). In 2003, Molnick, inventor and President of HGN, contacted CWC to license the Method Patent. Defendants CWC Gaming, Eyeball Network, and Chris Piche (collectively, "CWC Defendants") entered into a patent license agreement ("Agreement") with HGN regarding the Method Patent. ("FAC," Doc. # 98 ¶¶ 24, 27.) The Agreement granted the CWC Defendants a license to use the Method Patent and to grant sub-licenses, with some restrictions. (Id. ¶¶ 29–34.)

On July 10, 2006, HGN filed a First Amended Complaint, alleging patent infringement and related state law claims against various defendants.[1] (FAC, Doc. # 98.) HGN alleges that CWC infringed its Method Patent through CWC's operation of an online gambling website and the production and distribution of online gambling software that permits sports betting, lottery, keno and bingo games, in violation of the Agreement. (Id. ¶¶ 88–89.)

The instant R&R arises from a discovery dispute that began with Plaintiffs' February 12, 2007 request for the production of documents. (See Doc.

---

[1] On March 27, 2007, the Court granted Defendants summary judgment as to Count Two (Declaratory Judgment) and Count Seven (Conversion). (Doc. # 143.)

147 at 3.) Plaintiffs filed a motion to compel on July 31, 2007. (Doc. # 147.) The Court granted Plaintiffs' motion on February 12, 2008 and ordered Defendants to provide to Plaintiffs all responsive documents by March 11, 2008, except for one item, which was to be produced upon entry of a protective order. (Doc. # 154.)

On March 11, 2008, the CWC Defendants mailed their first supplemental response to Plaintiffs' first request for production of documents and claimed to have no responsive documents for some of Plaintiffs' requests. (Doc. # 156.) On March 31, 2008, Plaintiffs filed a motion for sanctions. (Id.) On June 27, 2008, a hearing was held on the motion before Magistrate Judge Lawrence R. Leavitt, who ordered Defendants to either produce the materials at issue by July 14, 2008, or have Piche provide a detailed explanation in a sworn affidavit as to why the documents or other materials have not been produced. (Doc. # 168.) The Court further ordered that if any documents could not be produced or did not exist, then a detailed explanation would be required. (Id.)

On September 22, 2008, at Plaintiffs' request, Magistrate Judge Leavitt held a status conference. (Doc. # 183.) At the conference, Judge Leavitt authorized Plaintiffs to depose Piche about all aspects of discovery in the case. At Piche's deposition, it was revealed that the CWC Defendants construed the term

"documents" to mean only paper documents rather than including electronically stored information. (Doc. # 244 at 9.)

On February 9, 2009, Plaintiffs filed a sealed Status Report Regarding Defendants Non-Compliance with Court Orders. (Doc. # 188.) The Status Report sought sanctions pursuant to Rule 37(b)(2), citing violations of court discovery orders. (Id. at 24.) After full briefing, the court held a hearing on the matter.[2] On July 20, 2009, the Court issued an order granting Plaintiffs' request for sanctions against the CWC Defendants. (Doc. # 210.) The Court stated:

> [T]he court finds that the CWC defendants have abused the discovery process through a pattern of delay, evasiveness and non-compliance with this court orders. Such behavior has forced plaintiffs to invest a substantial amount of time, effort and attorneys fees in a continuing attempt to obtain relevant and useful discovery. Despite repeated document demands and court orders, and repeated assurances that all responsive documents were being produced, the CWC defendants have still not produced relevant and responsive documents during the more than 2-year discovery period. If the CWC defendants had previously been handed less severe sanctions for their failure to produce, one or more of the harsh evidentiary sanctions authorized by Rule 37(b) would now be appropriate. Fairness, however, requires that the CWC defendants be given, and are hereby put on clear notice that their failure to comply with this court's orders will result in severe evidentiary sanctions. The CWC defendants are also given

---

[2] The Court notes that on March 20, 2009, defense counsel filed an Emergency Motion to Withdraw as Counsel of Record for the CWC Defendants. (Doc. # 199.) On April 6, 2009, Magistrate Judge Leavitt granted the Motion to Withdraw and granted new counsel's request for an extension to review discovery and other pending matters. (Doc. # 207.)

> notice that their continued failure to respond fully to plaintiffs' discovery requests will invite the type of sanctions plaintiffs currently seek.

(Id. at 9–10.) The Court ordered the CWC Defendants to pay the reasonable expenses, including attorneys' fees and costs, incurred by Plaintiffs in making various filings[3]; conducting the discovery compliance deposition of Piche on November 3, 2008; and preparing for and participating in the September 22, 2008 and March 2, 2009 discovery hearings. (Id. at 10.) The Court further ordered the CWC Defendants to fully comply with the Court's February 12, 2008 order by August 10, 2009. (Id.)

On July 31, 2009, the CWC Defendants filed an Objection to the Magistrate's July 20, 2009 Order. (Doc. # 211.) The undersigned judge held a status conference on August 5, 2009. The undersigned ordered that the attorneys' fees sanctions be put on hold until the end of the case but affirmed the Magistrate Judge's order with respect to its requirement that the documents be produced. (Doc. # 241, Ex. 1 at 12–13.) The undersigned also ordered the CWC Defendants to comply with the Magistrate Judge's order to produce an "identical mirror image copy of the backup database . . . without any alterations, modifications or deletions,

---

[3] The Court ordered CWC Defendants to pay Plaintiffs' reasonable expenses in connection with filing Document Nos. 147, 150, 156, 157, 160, 173, 178, 188, 194, 195, and 196. (Doc. # 210 at 10.)

together with any necessary passwords required to access the information contained in the database" by September 7, 2009. (Doc. # 219 at 2.) The Court directed the CWC Defendants that if they "run into some significant technical difficulty" that would require an extension of time, they would have to file and serve a motion and "have some expert computer people signing off on it . . . and have them ready to be examined under oath." (Doc. # 241, Ex. 1 at 17.) Finally, the Court warned the CWC Defendants that if the information was not timely produced, "the next shoe to drop will be judgment against your client." (Id.) On August 24, 2009, the undersigned issued a written Order Granting in Part and Denying in Part Request for Review of Magistrate Judge Decision. (Doc. # 219.)

On September 2, 2009, the CWC Defendants filed an Emergency Motion to Amend Protective Order for the CWC Defendants' Database (doc. # 221), which Judge Leavitt granted on December 7, 2009. (Doc. # 231.) The Protective Order was entered on December 21, 2009. (Doc. # 233.) On April 15, 2010, Plaintiffs' expert, Chris Beall ("Beall"), received a sealed copy of the CWC Defendants' database from Plaintiffs' counsel, Craig Marquiz ("Marquiz"). ("Beall Decl.," Doc. # 240, Ex. A ¶ 6.) Beall determined that he did not have adequate information to access and analyze the contents of the database. (Id.

¶ 10–12.) Beall asked Marquiz if the CWC Defendants provided any other instructions or directions, and shortly thereafter, Marquiz advised that defense counsel had confirmed that everything necessary to access the database was contained in the file already provided to them. (Id. ¶¶ 19–20.)

During his examination of the database, Beall ran certain queries that generated various error messages. (Id. ¶¶ 41, 43–46.) After examining the database, Beall determined "to a reasonable degree of scientific certainty" that the CWC Defendants' Customer table had been altered, modified, manipulated, or otherwise contains errors. (Id. ¶ 59.) Beall found that absent such alteration, modification, manipulation or errors, the queries would have generated response data without the error messages. (Id. ¶ 60.) Marquiz contacted defense counsel Jacob Reynolds ("Reynolds") regarding this problem but was unable to determine what was wrong with the produced database. (See Doc. # 240, Exs. C, D.)

On July 28, 2010, Plaintiffs filed a Status Report, stating that the database produced by CWC Defendants "appears to have been altered modified, manipulated, or was produced with errors in it[.]" (Doc. # 240.) On August 5, 2010, Plaintiffs filed a Request for an Expedited Status Conference/Evidentiary Hearing Regarding the CWC Defendants' Database. (Doc. # 241.) On August 13, 2010, the CWC Defendants filed a Response, in which Defendants stated, inter

alia, that Plaintiffs misrepresented efforts to resolve concerns with the database. (Doc. # 243.) In a declaration attached to the Response, Piche explained—for the first time—that "there are errors that are resident in the database." ("Piche Decl.," Doc. #243-4 ¶ 4.) Piche further stated:

> I wish to underscore that these errors also reside in the database that is used by CWC, not just the copies that were produced in response to discovery requests in this action. The errors resulted from one or more separate events occurring during the time Michael McConnell was in charge of our database (McConnell is no longer with our company): (1) a crash that occurred in early August 2009, when our server lost power while writing to its disk drives; and/or (2) several instances when the Oracle database ran out of disk space while writing to its disk drives.

(Id. ¶ 5.) Piche explained that "though we could have attempted to fix these errors on the original database, we did not do so, because counsel advised us not to modify the database before producing it for this litigation." (Id. ¶ 11.) On August 23, 2010, Plaintiffs filed a Reply Memorandum in Support of its Request for an Expedited Status Conference. (Doc. # 244.) On December 1, 2010, Defendants filed a Sur-Reply to Plaintiffs' Reply. (Doc. # 250.)

Magistrate Judge Leavitt held a discovery hearing on February 14, 2011 and an evidentiary hearing on February 17, 2011, after which he ordered the parties to submit briefs. (Docs. ## 257–58.)

Plaintiffs noted that Piche testified that the information in Defendants'

electronic database is searchable by entering specific queries. ("Pls. Brief," Doc. # 260 at 5 (citing Doc. # 173-2 at 2 ¶ 6.)) However, Plaintiffs argued that "the corrupt inoperable copy of the database produced to Plaintiffs was not searchable, unless you limited your search, for example, to certain partial incomplete searches of only a limited number of records." (Id.) Plaintiffs contended that key tables in the database were offline, which renders certain files inaccessible. (Id.) Plaintiffs also questioned whether Defendants produced an exact copy of their production database to Plaintiffs because that would mean Defendants were using a corrupted database between August 9, 2009 and August 25, 2009. (Id. at 11.) Plaintiffs further argued that although the undersigned ordered Defendants to produce a copy of their database and immediately notify the Court of any problems, Defendants did not mention the alleged database crash until August 2010, after Plaintiffs submitted a status report concerning the database copy. (Id. at 260.)

CWC Defendants asserted that "the accumulated record of noncompliance to which plaintiffs repeatedly refer was decisively broken when defendants switched counsel to the Hutchison & Steffen firm." ("Defs' Brief," Doc. # 261 at 2.) The CWC Defendants also argued that only 1.4% of the records in the database was inaccessible, and that "these records are simply not consequential enough to alter the outcome of the action." (Id. at 3.) The CWC

Defendants further argued that Plaintiffs did not try to resolve concerns over the database in good faith before seeking court intervention. (Id. at 3, 33.)

On August 12, 2011, Magistrate Judge Leavitt issued a Report & Recommendation ("R&R") recommending that Plaintiffs' motion for terminating sanctions be granted, that the CWC Defendants' answer be stricken, and that a default judgment be entered against the CWC Defendants. ("R&R," Doc. # 262 at 15.) On August 29, 2011, the CWC Defendants filed the instant Objection to Magistrate Report & Recommendations ("Objection"). ("Obj.," Doc. # 265.) On September 15, 2011, Plaintiffs filed a Response to the CWC Defendants' Objection to the Magistrate Judge's Report & Recommendation ("Response"). ("Resp.," Doc. # 267.) On October 6, 2011, the CWC Defendants filed a Reply to Plaintiffs' Response ("Reply"). ("Reply," Doc. # 270.)

## STANDARD OF REVIEW

A party may file and serve specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2. Upon the filing of such objections, the district court must make a de novo determination of those portions of the findings or recommendations to which objection is made. Local Rule IB 3-2(b). De novo review means the court must consider the matter anew, the same as

if it had not been heard before and as if no decision previously had been rendered. Ness v. Commissioner, 954 F.2d 1495, 1497 (9th Cir. 1992).

"The court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.' The court also may receive further evidence or recommit the matter to the magistrate with instructions." McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc., 656 F.2d 1309, 1313 (9th Cir. 1981) (citation omitted); Local Rule IB 3-2(b). "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." U.S. v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).

DISCUSSION

In connection with the briefing and hearing on Defendants' objection to the Magistrate's R&R, both sides proffered additional evidence that was not before Magistrate Judge Leavitt when he ruled on Plaintiffs' Motion for Terminating Sanctions. Specifically, in support of their objection to the Magistrate's R&R, the CWC Defendants offered a supplemental report from their expert, Sergey Sverchkov, which purportedly shows that the database was not corrupted but merely offline. This evidence is plainly relevant to the issue at hand, as it speaks to whether the CWC Defendants tampered with the database before

producing it to Plaintiffs. At the hearing on their objection, the Defendants asserted that they did not present this evidence before Magistrate Judge Leavitt due to the shortage of time they were given to respond to Plaintiffs' expert report and prepare for the evidentiary hearing.

Additionally, at the hearing, Plaintiffs proffered for the first time a Rebuttal Declaration from Chris Beall with the following attached exhibits: (1) a screen image showing wagering activity concerning Sharon Chartier on March 2, 2005, and (2) the CWC Defendants' Oracle database for transactions on March 2, 2005, corresponding to the activity shown in the screen image. According to Plaintiffs, this evidence supports their contention that the alleged August 2009 database crash occurred hours after the hearing on August 5, 2009, during which the undersigned announced in open court that the CWC Defendants had to produce a copy of their electronic database to Plaintiffs. Plaintiffs submitted this rebuttal evidence in response to arguments made by Defendants in their reply brief in support of their objections.

Given the strong policy favoring the disposition of cases on the merits, the Ninth Circuit has emphasized the very harsh and drastic nature of the sanction of default judgment. See U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) ("Due to the policy of

favoring judgments on the merits, a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.") (internal quotation marks omitted); see also Commodity Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 775–76 (9th Cir. 1995) ("Entering a default judgment against a defendant as a discovery sanction precludes him from defending against the allegations raised against him. This court has refrained from imposing this very severe penalty in all but the most extreme cases."). Here, based on the parties' recent evidentiary submissions as well as counsels' representations at the hearing, it appears that Magistrate Judge Leavitt did not have a full and complete evidentiary record before him when he ruled on Plaintiffs' Motion for Terminating Sanctions. Under these circumstances, and in light of the severity of the recommended sanctions, the Court determines that the most prudent course of action is to **VACATE** the Magistrate's R&R and **REMAND** the matter to newly assigned Magistrate Judge Cam Ferenbach for the purpose of conducting a new evidentiary hearing and issuing a new Report and Recommendation based on a complete record. See McDonnell Douglas Corp., 656 F.2d at 1313 (recognizing the district judge's authority to recommit the matter to the magistrate judge with instructions).

However, as this Court made clear at the hearing, this is not an opportunity for the parties to procure additional experts or advance new theories about what happened to the database. The parties have had more than ample time to present the evidence that they wish to present to the Court. Therefore, the Magistrate Judge shall consider only the following categories of evidence: (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating Sanctions, (2) the additional evidence submitted in support of and in opposition to Defendants' Objections to the Magistrate's R&R, and (3) the evidence proffered at the March 23, 2012 hearing on Defendants' Objections. The parties shall not be permitted to offer new evidence not previously presented to the Court.

CONCLUSION

For the reasons stated above, the Court **VACATES** the Magistrate's Report and Recommendation (doc. # 262) and **REMANDS** the matter to the Magistrate Judge for a new evidentiary hearing.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 14, 2012.

David Alan Ezra
United States District Judge

Home Gambling Network, Inc., et al. v. Chris Piche, et al., CV No. 05-00610 DAE-VCF; ORDER: (1) VACATING THE MAGISTRATE'S REPORT AND RECOMMENDATION AND (2) REMANDING THE MATTER TO THE MAGISTRATE FOR A NEW EVIDENTIARY HEARING