# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### ***

| | |
|---|---|
| HOME GAMBLING NETWORK, INC., *et al.,* | 2:05-cv-00610-DAE -VCF |
| Plaintiffs, | **REPORT & RECOMMENDATION** |
| vs. | |
| CHRIS PICHE, *et al.,* | **(Remand of R&R Granting Plaintiff's Motion** |
| Defendants. | **for Terminating Sanctions #262)** |

Before the court is United States District Judge David Alan Ezra's Order (1) Vacating the Magistrate's Report and Recommendation and (2) Remanding the Matter to the Magistrate for New Evidentiary Hearing. (#276). The court held an Evidentiary Hearing on December 11, 2012. (#307 and #308).

## <u>BACKGROUND</u>

This action has been pending since May 16, 2005. (#1). A discovery dispute arose in connection with plaintiffs' February 12, 2007, requests for production of documents. Plaintiffs filed a motion to compel on July 31, 2007 (#147), which the court granted on February 12, 2008 (#154). Defendants mailed their supplemental responses on March 11, 2008, but claimed to have no responses for some of plaintiffs' requests. (#156). Plaintiffs filed a motion for sanctions on March 31, 2008. *Id.* Judge Leavitt held a hearing, and ordered defendants to either produce materials by July 14, 2008, or have defendant Piche provide a detailed explanation in a sworn affidavit as to why the documents or other materials have not been produced. (#168).

On September 22, 2008, Judge Leavitt held a status conference, where the court authorized plaintiffs to depose defendant Piche about discovery in the action.  (#183).  During defendant Piche's deposition, it was revealed that defendants construed the term "documents" during the course of discovery to mean only paper documents.  (#244).  On February 9, 2009, plaintiffs filed a sealed status report regarding the defendants' non-compliance with court orders and seeking sanctions.  (#188).  The court issued an order on July 20, 2009, granting plaintiffs' request for sanctions and awarding attorneys' fees.  (#210).  The court ordered full compliance with the order by August 10, 2009.  *Id.*

On July 31, 2009 the defendants filed an objection to the court's order (#211), and the District Judge scheduled a status conference for August 5, 2009 (#213).  The court ordered that the attorneys' fees sanctions be put on hold until the end of the case, but affirmed the Magistrate Judge's order with respect to its requirement that the documents be produced.  (#241).  The court also ordered the defendants to comply with the Magistrate Judge's order to produce an "identical mirror image copy of the backup database . . . without any alterations, modifications or deletions, together with any necessary passwords required to access the information contained in the database" by September 7, 2009.  *Id.*

Plaintiffs' expert, Chris Beall ("Beall"), received a sealed copy of the defendants' database from Plaintiffs' counsel, Craig Marquiz.  (#240).  Beall determined that he did not have adequate information to access and analyze the contents of the database, and during his examination of the database, he ran certain queries that generated error messages.  *Id.*  Beall asserted in his declaration that the defendants' Customer table had been altered, modified, manipulated, or otherwise contains errors.  *Id.*  On July 28, 2010, plaintiffs filed a Status Report, stating that the database produced by defendants "appears to have been altered modified, manipulated, or was produced with errors in it." (#240). On August 5, 2010, plaintiffs filed a Request for an Expedited Status Conference/Evidentiary Hearing Regarding the defendants' database. (#241).

In response to the request, defendant Piche explained—for the first time—that "there are errors that are resident in the database." (#143). Piche explained that "though we could have attempted to fix these errors on the original database, we did not do so, because counsel advised us not to modify the database before producing it for this litigation." *Id.* Magistrate Judge Leavitt held a discovery hearing on February 14, 2011, and an evidentiary hearing on February 17, 2011, after which he ordered the parties to submit briefs. (#257 and #258).

After considering the parties' arguments, on August 12, 2011, Magistrate Judge Leavitt issued a Report & Recommendation ("R&R") recommending that plaintiffs' request for terminating sanctions (#244) be granted, that the CWC Defendants' answer be stricken, and that a default judgment be entered against the CWC Defendants. (#262). On August 29, 2011, the defendants filed an objection to the R&R. (#265). The plaintiffs filed a response (#267), and defendants filed a reply (#270).

During the briefing and hearing on the objection, the parties submitted additional evidence that had not been reviewed by Judge Leavitt. (#276). Defendants submitted a Supplemental Report from their expert Sergey Sverchkov (#265-4)(hereinafter "Sverchkov's Report") stating that the database was not corrupt but merely "offline" and containing instructions as to how to properly mount the database (#265-4 Exhibit 7). Judge Ezra held that this evidence was "plainly relevant to the issue at hand, as it speaks to whether the CWC Defendants tampered with the database before producing it to Plaintiffs." (#276). Plaintiffs proffered for the first time at the hearing on the objection the declaration of their expert Beall, with following exhibits: (1) a screen image showing wagering activity concerning Sharon Chartier on March 2, 2005, and (2) the CWC Defendants' Oracle database for transactions on March 2, 2005, corresponding to the activity shown in the screen image. *Id.* Plaintiffs argued that this evidence supports their contention that the alleged August 2009 database crash occurred hours after the hearing on August 5, 2009, during which Judge Ezra announced in open court that the defendants had to produce a copy of the database to plaintiffs. *Id.*

Upon a review of this additional evidence, Judge Ezra issued an order vacating Judge Leavitt's order (#262) and remanding the matter to the undersigned Magistrate Judge to conduct an evidentiary hearing. *Id.* The Judge stated that "this is not an opportunity for the parties to procure additional experts or advance new theories about what happened to the database," and that the undersigned should consider only the following <u>categories</u> of evidence: (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating Sanctions, (2) the additional evidence submitted in support of and in opposition to Defendants' Objections to the Magistrate's R&R, and (3) the evidence proffered at the March 23, 2012, hearing on Defendants' Objections." *Id.*

On June 7, 2012, this court issued a minute order scheduling a pre-evidentiary hearing for June 20, 2012, for the purpose of establishing the procedures for the evidentiary hearing. (#277). The court also scheduled an evidentiary hearing for July 25, 2012. *Id.* Following the pre-evidentiary hearing, on June 20, 2012, the court issued an order vacating the July 25, 2012, hearing, and stating that, "on or before July 18, 2012, the parties shall file a Joint Pre-Hearing Statement, including (1) the issues to be decided during the evidentiary hearing, (2) a list of stipulated facts, (3) a list of witnesses whose declaration and/or testimony the parties will be relying on, and (4) a list of exhibits that the parties intend on to use in their briefs." (#278). The court also ordered the plaintiffs to file an Opening Brief on or before July 25, 2012, the defendants to file a response on or before August 20, 2012, and plaintiffs to file a reply on or before August 31, 2012. *Id.* The court held that the "parties' Joint Pre-Hearing Statement and Briefs must comply with Judge Ezra's order limiting the categories of evidence to be presented at the hearing as follows:

> (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the motion for terminating sanctions;
>
> (2) the additional evidence submitted in support of and in opposition to defendants' objections to the magistrate's R&R; and

(3) the evidence proffered at the March 23, 2012, hearing on defendants' objections."

*Id.*  The evidentiary hearing was rescheduled for September 26, 2012, at 9:30 a.m. in Courtroom 3A.  *Id.*

On July 18, 2012, the court held a telephonic hearing to resolve a dispute between the parties regarding the Joint Pre-Hearing Statement.  (#280).  The parties submitted their Joint Pre-Hearing Statement on the same day in compliance with the court's order (#278).  (#281).  The parties agreed that the issues to be decided during the evidentiary hearing were: "A. Did the Defendants fail to produce the database as ordered by the Court? B. If yes, was the Defendants' failure to do so intentional, willful, or in bad faith? C. Are Terminating Sanctions Appropriate."  *Id.*  Plaintiffs took the position that "the relevant materials concerning the Court's order that is at issue include (a) the transcript of the hearing on August 5, 2009, (b) the Minute Entry at Doc. #214 including the ECF docket entry and the written document attached, and (c) the written order at Doc. #219, dated August 24, 2009."  *Id.*  Defendants did not agree to the submission of "such a statement as part of [the] joint statement and believe[d] it should be submitted as argument."  *Id.*  Plaintiff also submitted "Plaintiff's Statement of Established Facts" over defendants' objection.  *Id.*

Plaintiffs submitted evidence to be presented in accordance with Judge Ezra's order remanding the matter to the undersigned (#276), and listed the following:

**"(1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating Sanctions**

At the hearing, the exhibits admitted into evidence are listed at Doc. #258. A copy of the list of exhibits is attached as Exhibit A. The testimony appears in the transcript of the proceedings, filed at Doc. #259. The following witnesses testified:

(a) Chris Piche (adverse witness called by Plaintiff)

(b) Chris Beall (plaintiff's expert)

(c) Rohit "Rick" Virmani (defendants' expert)

(d) Sergey Sverchkov (defendants' expert)

(e) Renat Khasanshyn (defendants' expert)

**(2) the additional evidence submitted in support of and in opposition to Defendants'
Objections to the Magistrate's R&R**

(a) This is the documents (sic) filed at Doc. #265.

**(3) the evidence proffered at the March 23, 2012 hearing on Defendants' Objections**

(a) This is the Declaration of Chris Beall, filed at Doc. #274, and exhibits thereto."

*Id.*

Defendants presented the court with a list of witnesses and exhibits they intended to rely upon in their brief to the court.  *Id.*  Plaintiffs also presented the court with a list of exhibits and witnesses pursuant to this court's order (#278).  *Id.*  On July 25, 2012, plaintiffs filed their opening brief.  (#283).  The parties filed a stipulation on August 18, 2012 (#285), which the court signed on August 20, 2013, rescheduling the evidentiary hearing for October 23, 2012 (#286).  Defendants filed their answering brief on August 20, 2012.  (#288).  On August 31, 2012, the parties file a stipulation extending the deadline for plaintiffs' reply brief (#292), which the court signed the same day (#293).  On September 4, 2012, plaintiffs filed their reply brief.  (#294).

On October 18, 2012, the court issued an order stating that since "[o]ne question for the court to decide at this hearing is whether a certain database is "corrupted" or "merely offline (#276, p.11)," and document #234 established that counsel "marked and sealed, in their original boxes, three external hard drives containing mirror images of the database at issue," plaintiffs' counsel and defense counsel each chose one envelope, and the third "containing a hard drive with a mirror image of the data base at issue has remained in Mr. Reynolds' custody for delivery to the Court at a later date," all three of the hard drives were relevant to the evidentiary hearing.  (#295).  The courted ordered defendants to "deliver the third hard drive designated for later delivery to the court, in its sealed envelope and box, to the

Courtroom Administrator in Courtroom 3C," and both parties to bring to the evidentiary hearing their copies of the database at issue and equipment and technicians to operate the database so that the "court can observe the basis for Plaintiffs' claim that the database is corrupted and Defendants' claim that it is merely offline." *Id.*

On October 18, 2012, defendants sent a letter to the court, which the court filed, regarding the court's order (#295), stating that the court's copy of the database could be submitted immediately, but that defendants' expert and consultant for database maintenance, Servey Sverchiv, resides in Belarus. (#296). Defendants requested an emergency telephonic conference on the issue. *Id.* The court entered a minute order on the same day scheduling a hearing for October 19, 2012. (#298). The court held a telephonic hearing on October 19, 2012 (#304), and ordered that (1) "the Evidentiary Hearing scheduled for October 23, 2012, is VACATED," (2) the parties must meet and confer to agree upon a new date(s) for the Evidentiary Hearing and must file a stipulation with the court by October 26, 2012, providing such date(s)," (3) that no new evidence may be introduced at the hearing, and (4) that "the Court would prefer Mr. Sverchov and Mr. Rick Vermoni to be present at the rescheduled Evidentiary Hearing." (#300). After the telephonic hearing, the parties filed a joint request for telephonic conference to address additional concerns. (#299). On October 22, 2012, the court issued an order scheduling a telephonic conference for October 23, 2012. (#301).

The court held the telephonic conference and issued an order as follows: (a) "plaintiffs may make one copy of the database at issue. The copy must be maintained in accordance with the Protective Order for CWC Defendants' database. (#233)," (b) "an Evidentiary Hearing is scheduled for December 11, 2012, at 10:00 a.m, in Courtroom 3B," and (c) "pursuant to Judge Ezra's order (#276), the scope of the Evidentiary Hearing is limited to whether the database is corrupt, or "merely offline," and the categories of evidence for the Evidentiary Hearing are limited as follows: (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the motion for terminating sanctions; (2) the

additional evidence submitted in support of and in opposition to defendants' objections to the magistrate's R&R; and (3) the evidence proffered at the March 23, 2012, hearing on defendants' objections." (#302).

The court held an evidentiary hearing on December 11, 2012. (#307 and #308). At the conclusion of the hearing, the court ordered the parties to file simultaneous briefs not later than December 18, 2012, focusing on the issue of whether the defendants failed to produce a mirror image of the database as ordered by the court based on the evidence presented during the evidentiary hearing. *Id.* The court limited the briefs to eight pages. *Id.* On December 18, 2012, the parties filed their briefs in accordance with the court's order (#307). (#309 and #310).

A.    **December 11, 2012, Evidentiary Hearing**

At the beginning of the hearing, the court heard arguments from the parties regarding the expert plaintiffs brought to the hearing, Dr. Sam Alapati. (#307). Defendants argued that Dr. Alapati should not be permitted to testify as an expert, as Mr. Beall, plaintiffs' original expert, was available for the hearing and Judge Ezra specifically ordered that the parties were not to procure additional experts. *Id.* Plaintiffs stated that they need an opportunity to rebut what defendants' expert is going to state and/or purport to demonstrate. *Id.* Defendants represented to the court that all their expert was going to do was go over Sverchkov's Report. *Id.* The court held that Mr. Alapache could stay for the hearing as a technician. *Id.* The court stated that after defendants put on evidence, the court would determine if Mr. Alapache could testify as an expert. *Id.*

Defendants presented Mr. Sverchkov, who is Oracle database certified, as their expert. *Id.* Mr. Sverchkov discussed his report (#265-4), and stated that Mr. Beall, plaintiffs' previous expert, did not mount the database correctly and consequently received the message that Users12.dbf were "offline." *Id.* Using defendants' copy of the database, Mr. Sverchkov followed the instructions in Exhibit 7 to his report and demonstrated to the court the correct way to mount the database. *Id.* After doing so,

Users12.dbf was "online."  *Id.*   Mr. Sverchkov ran the same queries that Mr. Beall reportedly experienced errors with, and these queries were run successfully and showed no errors.  *Id.*

After defendants demonstrated that when following the instructions provided by Mr. Sverchkov in Exhibit 7 to his report (#265-4) no errors occurred on defendants' copy of the database, the court stated that it was inclined to have the court's copy of the database mounted and operated by Mr. Sverchkov.  *Id.*  Plaintiffs objected to this proposition, stating that it was not within the bounds of Judge Ezra's order to permit the court's copy to be used to further a "new theory."  *Id.*  The court discussed the Notice filed by defendants regarding compliance with the court's order to deliver the database (#231) and defendants holding the court's copy until further instruction (#234).  *Id.*  The declaration attached to the Notice stated that (1) defendants requested a copy of the database be held by the court and the plaintiffs did not have any objection to the request, (2) counsel requested defendants to prepare three mirror images of the database on external hard drives, counsel marked and sealed the databases in their original boxes on September 8, 2009, (3) because the court had not yet ruled on the request to provide a copy to the court, defense counsel contacted plaintiffs' counsel who suggested that defense counsel submit a declaration regarding the court's copy, (4) defense counsel had all three databases sealed in envelopes on December 29, 2009, and that plaintiffs' counsel chose not to sign over the seals, despite being given the opportunity to do so, and instead had defense counsel submit the declaration, and (5) plaintiffs' counsel was given the first choice between the sealed envelopes on December 29, 2009, defense counsel chose next, and the remaining envelope was left sealed "should it be necessary or desired to provide the Court with a copy."  (#234).

In light of plaintiffs' counsel's objection, the court concluded that Mr. Sverchkov would first operate the plaintiffs' copy of the database on the plaintiffs' technicians computer after verifying that Oracle was set up correctly on the computer.  *Id.*   Mr. Sverchkov used Exhibit 7 from his report to mount the plaintiffs' copy of the database on plaintiffs' computer, and plaintiffs' technician sat with Mr.

Sverchkov to ensure that the proper steps were followed.  *Id.*  While going through the steps listed in Exhibit 7, Users12.dbf on plaintiffs' copy was "Offline."  *Id.*  The Users12.dbf file bore a date stamp of March 22, 2012.  *Id.*  Defense counsel noted that this was *one day* before the March 23, 2012, hearing before Judge Ezra.  *Id.*  Plaintiffs' technician could not provide an explanation of why the date stamp was March 22, 2012, and plaintiffs' counsel asserted that this was most likely because Mr. Beall attempted to recover the Users12.dbf on that date.  *Id.*  Mr. Sverchkov opined to the court that the significance of the March 22, 2012, date stamp was that Users12.dbf was switched "offline" or altered in some way on this day.  *Id.*  He further opined that if the file was *never* accessed by plaintiffs (as they allege), there is no way this date would appear, rather the date would be sometime in 2009 when the database mirror images were created.  *Id.*  Mr. Sverchkov stated that the data file had been accessed and taken "offline" on March 22, 2012, and that all of the other files had date stamps of the date of the hearing because they were online.  *Id.*

The court ordered Mr. Sverchov to use his computer and defendants' copy of the database and to demonstrate what happens when a file taken "offline."  *Id.*  The file that was taken "offline" during the hearing bore the date stamp of December 11, 2012, 11:55 a.m, the date of the hearing.  *Id.*  After running a couple of queries and taking certain files "offline," it was demonstrated that *if* a file is never accessed, the date would remain the same, and if a file is accessed and turned "offline," the date stamp is changed to that date and time.  *Id.*  The court held that since there was no reason to believe that the court's database was tampered with or altered in any way since it was created, the court's copy would be a good 'control' test.  *Id*.

The court ordered Mr. Sverchkov to operate the court's copy of the database on defendants' computer following the steps outline in Exhibit 7 of his report.  *Id.*  As an initial matter, the court had Mr. Sverchkov confirm the date stamp on all of the files contained on the court's copy of the database.  *Id.*  Mr. Sverchkov demonstrated to the court that all user files were date stamped September 3 or 4,

10

2009.  *Id.*  The court instructed Mr. Sverchkov to go through the steps from Exhibit 7 and to inform the court and counsel as each step was completed.  *Id.*  When Mr. Sverchkov completed Step 9 of the instructions, the screen indicated that Users12.dbf was "online."  *Id.*  The court's copy of the database was returned, and the court had the plaintiffs' copy of the database mounted again.  *Id.*  Mr. Sverchkov tried to turn Users12.dbf "online," but received an error message stating that media recovery is needed.  *Id.*  The expert then tried to recover Users12.dbf, but received another error message.  *Id.*  Mr. Sverchkov stated that to recover the data file, an archive file from August 25, 2009, was needed.  *Id.*  Mr. Sverchkov then explained the difference between archive files, those containing archive transactions not used while the database is running and only when there is a need to restore or bring a file "online," and redo files, those that contain current transactions.  *Id.*  Plaintiffs' technician presented a proffer to the court, opining that if the Users12.dbf was "offline" when the database was given to plaintiffs, the plaintiffs would not be able to recover it without the archive/redo files, which are not on the plaintiffs' copy of the database.  *Id.*  The court concluded the hearing and ordered the parties to file simultaneous briefs.  *Id.*

### B.    Supplemental Briefs

On December 12, 2012, the court received two supplemental briefs, one from defendants (#309) and one from plaintiffs (#310).  The court will outline the arguments contained therein below.

### 1.    Defendants' Post-Hearing Brief (#309)

Defendants assert that the hearing demonstrated two thing: (1) defendants' compliance with the court's order to produce an exact copy of the database, and (2) "that plaintiffs intentionally misled the Court by fabricating or prolonging their claim of non-compliance."  (#309).

### a.    Defendants' Compliance

Defendants state that the court found during the hearing that the "defendants protected the record by producing three copies of the database, and offering plaintiffs their choice of any one of the three

copies," and that the court logically concluded that if the court's copy of the database worked properly, there was no reason to believe that defendants did not comply with the court's order. *Id.* Defendants state that plaintiffs' argument that their copy of the database was somehow different than the two others fails, as plaintiffs' counsel was given first choice. *Id.*

Defendants assert that their expert "identified the problem plaintiffs claimed to be experiencing as having nothing to do with them receiving a different version of the database, but as concerning the proper mounting of the database to access <u>all</u> files." *Id.* Mr. Sverchkov stated in his declaration that plaintiffs' previous expert, Chris Beall, "did not configure access to all datafiles in the Oracle database, leaving Users12.dbf offline and causing the errors which he reported..." (#265-4 Exhibit 4). Defendants state that Exhibit 7 (#265-4) set forth the instructions that, when followed correctly, would enable proper mounting and access to the Users12.dbf, including the ability to run successful queries cited by Beall in his declaration. (#309). Defendants argue that, "without introducing any new evidence," their expert demonstrated during the hearing that when following the instructions (##265-4 Exhibit 7), defendants' copy of the database did just that. *Id.* Defendants state that the court's copy of the database yielded the same result, and that since the court stated that there is no reason to find that plaintiffs' copy of the database was different from the court's copy or the defendants' copy, "defendants submit that the question whether they failed to produce the database as ordered by the Court is resolved in their favor." *Id.*

Defendants argue that this is supported by the court's recommendation to use the court's copy of the database as a control (no claim of tampering could be made) during the hearing and the fact that plaintiffs and defendants "went along" with the court's recommended approach after the demonstration using plaintiffs' copy. *Id.* Defendants state that the plaintiffs, "[f]aced with the facts adduced in open court" that the court's copy of the database operated as defendants' copy did, "plaintiffs switched their theory of the case to two new theories, arguing that (1) their copy of the database produces an error

message that redo logs from August 24, 2009, are needed, indicating that Users12.dbf was offline as of that date since before it was copied for plaintiffs," and (2) " the directory structure in the control file that was included with plaintiffs' copy of the database is corrupted, causing it to "think" there is more than one copy of the users12.dbf file without "telling" it to ignore the "trash" copy of the file."  *Id.*

Defendants argue that there are problems with plaintiffs' first theory, as there is no basis to find that plaintiffs "selected" a copy of the database that was different from the other two, and it was demonstrated in open court that Users12.dbf were "online" and accessible on the two other copies.  *Id.* It was also demonstrated, defendants assert, that there was no need to issue a recover command and that both copies showed that Users12.dbf were "online" when Mr. Sverchkov's instructions were followed correctly and when the databases were properly mounted.  *Id.*

Defendants state that the problem with the plaintiffs' second theory, the directory structure on plaintiffs' copy was corrupted, is the same, as there is no basis to find that plaintiffs' copy, chosen by plaintiffs' counsel, was different from the other two copies.  *Id.*  Defendants also assert that "it is crystal clear from the original report of plaintiffs' expert, Chris Beall," that plaintiffs knew about the structure of the database and the fact that there are two Users12.dbf files.  *Id.*  Defendants cite to a portion of Mr. Beall's report, wherein he stated that "**one file, users12.dbf, is specified in the directory in the provided README.txt file as being in a subdirectory called db2,**" and that "there was extra copy of a file named users12.dbf in the primary date file directory,..."  (Hearing Exhibit B).  Defendants argue that the report that initiated the challenge at issue here "fully recognized the presence of two users12.dbf files" and the configuration of the database.  (#309).  Defendants assert that the report also recognized that the original README.txt file in their copy of the database included this information, and that the fact that plaintiffs' expert could not successfully operate the database knowing this information, means that plaintiffs' expert was either "utterly incompetent or willfully blind."  *Id.*  Defendants state that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

hearing Exhibit B "completely undermines the validity and, indeed, the credibility of plaintiffs' second new theory." *Id.*

### b.     Plaintiffs Fabricated or Prolonged Their Claim of Non-Compliance

Defendants state that evidence presented at the hearing "adduced disturbing facts" regarding the plaintiffs' motion for terminating sanctions. *Id.* Plaintiffs' complaint throughout the process has been that Users12.dbf file was "offline" on their copy of the database, yet when the plaintiffs' copy of the database was mounted and displayed for the court, Users12.dbf bore a date stamp of March 22, 2012, as did all the other files except the non-working redundant Users12.dbf file, which bore a stamp of July 3, 2010. *Id.* Defendants argue that this indicates that "subsequent to consulting [Mr. Sverchkov's instructions], and one day prior to the hearing before Judge Ezra (on March 23, 2011), plaintiffs' expert, Chris Beall, followed Mr. Sverchkov's instructions and successfully querried the database, including working users12.dbf file." *Id.*

Defendants assert that plaintiffs' explanation for this date stamp, that Beall tried to recover the file on that date, does "not hold water," as Beall testified that he would not attempt to recover users12.dbf because it was his understanding that doing so would violate the protective order. *Id* (citing to Hearing Transcript February 15, 2011). Defendants also state that Beall's report does not mention attempting to recover any files and that since he did not attend the December 11, 2012, hearing, although he was available to, his report stands as the only evidence of what he actually did. *Id.* Defendants argue that the court should find that Beall actually attempted to use Mr. Sverchkov's instructions to query plaintiffs' copy, and did so successfully. *Id.* The defendants ask this court to find that plaintiffs did not bring Beall as a witness because his testimony would be unfavorable, and that "plaintiffs purposefully fabricated or prolonged the claim of non-compliance with the Production Order despite knowing that the claim lacked merit." *Id.*

. . .

## 2.      Plaintiffs' Post-Hearing Brief

Plaintiffs separated their arguments into five sections: (1) new evidence offered by defendants, (2) plaintiffs' copy of the database was not merely mounted incorrectly, (3) plaintiffs' objection to defendants' new theory, (4) plaintiffs' objection to the authenticity of court's copy of the database, and (5) plaintiffs' objection to defendants' failure to bring Mr. Vermoni to the hearing on December 11, 2012.  (#310).  The court will outline each below.

### a.      New Evidence

Plaintiffs argue that the defendants were permitted to present new evidence at the hearing and that plaintiffs were prohibited from offering any evidence to rebut the new evidence.  (#310).  Plaintiffs argue that court's Exhibit 1, the court's copy of the database, is new evidence and that the plaintiffs have not "had meaningful opportunity to inspect, or challenge the authenticity of, Court's Exhibit 1" or compare court's Exhibit 1 with the copy of an Oracle database that was produced to plaintiffs on December 29, 2009.  *Id.*  The plaintiffs argue that the court relied upon hearsay testimony contained on a document attached to the envelope containing court's Exhibit 1, and that plaintiffs were not provided with a copy of this document and had no opportunity to challenge the assertions on the document.  *Id.*  Plaintiffs state that the document was filed on October 19, 2012, "more than two years after the fact," and that plaintiffs did not know the document was being filed and were not given a copy of the document.  *Id.*  Plaintiffs argue that this is a "critical item of evidence," as the conclusions the court may reach based on the court's copy of the database would be clearly erroneous if the court's Exhibit 1 is not what it purports to be.  *Id.*

Plaintiffs state that Court's Exhibit 1 was a "surprise" to plaintiffs, and that the demonstrations performed by and testimony given by Mr. Sverchkov regarding the database and the Court's Exhibit 1 at the December 11, 2012, were "new evidence."  *Id.*  Plaintiffs received a transcript of the December 11, 2012, hearing on December 17, 2012.  *Id.*  Plaintiffs assert that since the supplemental briefing was

limited to "the evidence shown" at that hearing, this prejudiced them because they were not given the opportunity to challenge the authenticity of the court's Exhibit 1, to present rebuttal evidence to contradict the new evidence presented at the hearing, or point to conflicting evidence from the February 15, 2011, evidentiary hearing or elsewhere in the record. *Id.*

Plaintiffs also argue that every time counsel attempted to present evidence that was before Judge Leavitt, the court "cut him off" or sustained an objection made by defendants. *Id.* Plaintiffs state that they were trying to present evidence to show that the court's copy of the database is not authentic and is not what was produced to plaintiffs. *Id.* Plaintiffs argue that the constraints placed by the undersigned have "effectively denied [p]laintiffs a meaningful opportunity to be heard and to present evidence," amounting to a denial of "fundamental Due Process." *Id.*

### b.   Plaintiffs' Database Was Not Merely Mounted Incorrectly

Plaintiffs assert that at the March 23, 2012, hearing before Judge Ezra, defendants represented that the database produced to plaintiffs had the Users12.dbf "online," and argued, for the first time, that Users12.dbf was "offline" on plaintiffs' copy because the expert Chris Beall mounted the database incorrectly. *Id* (citing March 23, 2012, Hearing Transcript). Defendants submitted the affidavit of Mr. Sverchkov on August 29, 2011, providing the steps to follow to overcome the problem Beall was experiencing. (#265-4). Plaintiffs state that during the December 11, 2012, hearing, this theory was proven to be false, as Mr. Sverchkov himself as unable to get Users12.dbf "online" on plaintiffs' copy of the database, and instead received a message stating that Users12.dbf was "offline" and needed to be recovered. (#310). Plaintiffs argue that since Mr. Sverchkov's testimony in his affidavit (#265-4) was incorrect, the hearing should have concluded. *Id.*

Plaintiffs also assert that the evidence at the December 11, 2012 hearing showed that if you attempt to recover Users12.dbf on the copy of the database that was produced to plaintiffs, the Oracle system generates a series of error messages. *Id.* Plaintiffs conclude that "on the ***copy of the database***

*that Defendants produced to Plaintiffs*, the datafile Users12.dbf was not "merely offline," which was the issue to be decided at the December 11, 2012 evidentiary hearing (#302).  *Id.*

### c.      Objection to Defendants' New Theory

After the February 15, 2011, hearing in front of Judge Leavitt, the defendants presented the theory that the Users12.dbf was mounted incorrectly, and at the March 23, 2012, hearing before Judge Ezra, defense counsel proceeded with that theory.  (#310).  During the December 11, 2012, hearing before the undersigned, plaintiffs state, that theory was proven to be false, when Mr. Sverchkov could not get Users12.dbf "online" even when following his own instructions from his Exhibit 7.  *Id.*  As this was the theory defendants argued in their objection to the R&R (#265), and it failed, plaintiffs argue that the hearing should have ended.  *Id.*  Plaintiffs state that Judge Ezra's order remanding the matter prohibited the defendants from shifting to a new theory (#276).  *Id.*  The plaintiffs assert that defendants' theory in their opening brief for the December 11, 2012, hearing was that "there was absolutely nothing wrong with the database produced to Plaintiffs" (#288), but this proved to be false during the December 11, 2012, hearing.  *Id.*  Plaintiffs state that defendants' own expert demonstrated that these two theories were incorrect and that he was unable to get the plaintiffs' copy of the database to function properly.  *Id.*

Plaintiffs argue that the evidence at the December 11, 2012, evidentiary hearing showed that there was something fundamentally wrong with the database produced to plaintiffs, and that defendants were "allowed to shift to a new theory, *i.e.* that Court's Exhibit 1 (never offered to Judge Ezra or relied upon at the March 23 hearing) allegedly was the same as the copy of the database produced to plaintiffs."  *Id.*  Plaintiffs argue that the live demonstration by Mr. Sverchkov was new evidence advancing a new theory that the court's copy of the database, not the one produced to plaintiffs, was "online."  *Id.*  Plaintiffs state that no new theories were permitted pursuant to Judge Ezra's order (#276), and the defendants should not have been permitted to advance theirs.  *Id.*

#### d.      Objection to Authenticity of Court's Exhibit 1

Plaintiffs assert that the court's copy of the database does not appear to be the same copy of the database that plaintiffs received, and that each time plaintiffs tried to present evidence to demonstrate this during the hearing, the court either sustained an objection or prevented plaintiffs from offering such evidence.  (#310).  Plaintiffs argue that the databases are different because (1) "[d]efendants previously testified under oath that Plaintiffs' copy of the database was made on August 25, 2009," but the "datafiles in Court's Exhibit 1 were not date stamped August 25, 2009," rather the datafiles in Court's Exhibit 1 were date stamped September 4, 2009[1] (citing December 11, 2012, Hearing at 157-58), and (2) the court's copy had Users12.dbf "online," and the plaintiffs' copy had Users12.dbf "offline."  *Id.* Plaintiffs assert that "[t]he two copies were not taken at the same time of the same version of the same database."  *Id.*

Plaintiffs also argue in this section that Mr. Sverchkov confirmed during the hearing that if the database was copied when Users12.dbf was "offline," the files could not be recovered without archive redo logs.  *Id.*  It is plaintiffs' position that their copy of the database was made with Users12.dbf "offline," and they assert that this is consistent with the message plaintiffs get from Oracle when trying to recover Users12.dbf: "ORA--00279: change 9806177765 generated at 08/25/2009 19:37:43 needed for thread 1."  *Id.*  Plaintiffs state that "[t]his error message indicates that Plaintiffs need archive redo logs from August 25, 2009, in order to recover users12.dbf."  *Id.*  Plaintiffs assert that Mr. Vermoni, defendants' expert, testified during the February 15, 2011, hearing that he was given a copy of the database that was the same as plaintiffs' copy, that the datafile Users12.dbf was offline, that he was not provided with the archive redo logs, and that you need the redo logs to recover the database.  *Id* (citing

---

[1] The court notes that the date of creation is not relevant, so long as all database copies were created before December 29, 2009, when the three copies were presented to plaintiffs' counsel.

February 15, 2011, Hearing at 14-15, 44, and 63-64).   This demonstrates, plaintiffs argue, that defendants produced a copy of the database to plaintiffs with the Users12.dbf "offline," and the court's copy was a different copy with Users12.dbf "online."   *Id.*

                **e.**       **Objection to Defendants' Failure to Bring Mr. Vermoni to the Hearing**

Plaintiffs argue that defendants said they would bring Mr. Vermoni to the hearing but failed to, and that "[h]is absence from the hearing was critical, because his prior testimony shows that Court's Exhibit 1 is not the same as the copy produced to Plaintiffs."   (#310).   Plaintiffs state that they did not subpoena Mr. Vermoni because they relied on defendants' representation that they would bring him.   *Id.* Plaintiffs also state for the record that they object to the court's refusal to permit them to present evidence or to rebut defendants' new evidence.   *Id.*

## DISCUSSION

Pursuant to Judge Ezra's order, the undersigned was tasked to conduct a new evidentiary hearing and to issue a new Report and Recommendation based on a complete record.   (#276).   The instructions were very specific, and included that the hearing is "not an opportunity for the parties to procure additional experts or advance new theories about what happened to the database."   *Id.*   Judge Ezra limited the categories of evidence for the undersigned to consider as follows: "(1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating Sanctions, (2) the additional evidence submitted in support of and in opposition to Defendants' Objections to the Magistrate's R&R, and (3) the evidence proffered at the March 23, 2012, hearing on Defendants' Objections."   *Id.*   The undersigned will address the evidence considered and how the evidence fits in one of the three permitted categories.   *Id.*   Judge Ezra did not ask this court to decide which theory as to why the plaintiffs' copy was experiencing errors is correct, rather he stated that the undersigned was to

recommend a ruling on the motion for terminating sanctions (#244) after being provided with a "full and complete evidentiary record." *Id.*

The parties agreed in their Joint Pre-Hearing Statement that the issues to be decided during the evidentiary hearing were: "A. Did the Defendants fail to produce the database as ordered by the Court? B. If yes, was the Defendants' failure to do so intentional, willful, or in bad faith? C. Are Terminating Sanctions Appropriate." (#281). If the answer to issue A is no (i.e. defendants did provide the database as ordered), that is the end of the inquiry and terminating sanctions would not be warranted. Before addressing the issues, the court will discuss the evidence considered during the hearing which plaintiffs object to.

### A.      Evidence Considered

#### 1.      Court's Exhibit 1

On August 11, 2009, the defendants filed a document requesting, among other things, for production of an additional copy of the database to the court. (#216). Plaintiffs filed a reply stating that they "do not object to the Defendants' request to deposit an additional copy of their database with the Court." (#218). At all relevant times, the plaintiffs were fully aware of the defendants' request and eventual production of the database to the court. On January 4, 2010, the defendants filed a notice of compliance with the court's order to deliver the database (#231) and of holding the court's copy of the database until further instruction. (#234). Plaintiffs did not file an objection.

The declaration of defense counsel Jacob A. Reynolds attached to the notice represented that (1) defendants requested a copy of the database be held by the court as a "means of preempting any frivolous motion challenging the sufficiency of the production or any alleged modification of the database" (#216), (2) that plaintiffs had no objection to this request, (3) that three mirror images were created, marked, and sealed in their original boxes, (4) plaintiffs' counsel Craig Marquiz and defense

counsel spoke about the court's copy, and Mr. Marquiz suggested and agreed that defense counsel should submit a declaration regarding the court's database, (5) on December 29, 2009, defense counsel had all three databases sealed in envelopes and gave Mr. Marquiz an opportunity to sign the seal, but chose to have defense counsel submit the declaration instead, (6) Mr. Marquiz had the first opportunity to choose between the sealed envelopes, and (7) defense counsel chose second and the third envelope, marked with a "1," remained sealed for the court.  *Id.*  Plaintiffs did not file an objection or opposition to the defendants' notice (#234).  Plaintiffs did not dispute the events as testified to by defense counsel or the authenticity of the court's copy of the database.  A copy of the defendants' notice (#234) was emailed to all counsel of record on January 4, 2010, at 9:53 a.m.[2]

After this matter was remanded to the undersigned (#276), this court held several pre-evidentiary hearing conferences and hearings, both in person and telephonically (#279, #280, #304, and #305). Upon a review of the parties' briefs regarding the evidentiary hearing (#283 and #288), the court issued an order reciting the contents of the January 4, 2010, notice (#234) and ordering that "on October 23, 2012, defendants must deliver the third hard drive designated for later delivery to the court, in its sealed envelope and box, to the Courtroom Administrator in Courtroom 3C."  (#295).  The court also ordered both parties to bring their copy of the database and the equipment and technician to operate the database so that the court could "observe the basis for [p]laintiffs' claim that the database is corrupted and [d]efendants' claim that it is merely offline."  *Id.*  On October 18, 2012, at 12:05 p.m, this order was

---

[2]  Craig A. Marquiz marquizlaw@cox.net; Jacob A. Reynolds  jreynolds@hutchlegal.com, jrobeson@hutchlegal.com; Mark A. Hutchison mhutchison@hutchlegal.com, mcarnate@hutchlegal.com; Nicholas B. Salerno NSalerno@lgclawoffice.com, bprivett@lgclawoffice.com, cflick@lgclawoffice.com, lnorville@lgclawoffice.com, srooney@lgclawoffice.com
Paul Swenson Prior  sprior@swlaw.com, lvdocket@mindspring.com, mjimenez@swlaw.com, wrudnick@swlaw.com; Philip A Kantor PRSAK@aya.yale.edu; Sid Leach sleach@swlaw.com, docket@swlaw.com, mabennett@swlaw.com; Thomas R. Ryan tom@cicilialawoffice.com

electronically mailed to all attorneys on the court's docket.[3]  The plaintiffs' objection to Court's Exhibit 1 based on "surprise" is overruled.  Plaintiffs were on notice of the court's intention to have copies of the databases operated during the hearing, including the sealed copy delivered to the court.

On October 18, 2012, defendants requested a hearing regarding their expert's ability to appear at the evidentiary hearing, and represented that they would produce the court's copy of the database "immediately." (#296).  Plaintiffs did not file a notice, motion, or objection to the defendants providing the court with the court's copy "immediately," and did not argue during the telephonic hearing that the court's order (#295) to have technicians and the parties' copies of the databases at the hearing and to provide the court with the court's copy was outside the scope of Judge Ezra's order or inappropriate. Plaintiffs also did not dispute the authenticity of the copy provided to the court or ask the court for permission to inspect the copy before or after it was delivered to the court, despite being fully aware that the defendants were providing the court with the copy.

During the hearing on December 11, 2012, the court put into evidence as Court's Exhibit 1 the copy of the database defendants provided to the court.  (#307 and #308).  The court observed that the chain of custody was represented on the outside of the envelope, unsealed the envelope, and removed the database that remained in its original package from the envelope.  *Id.*  The document on the outside of the envelope contains (1) the declaration of Laric Tolleson, dated December 31, 2009,  stating that the envelope, along with two similar envelopes, were offered to Mr. Marquiz, that Mr. Marquiz chose envelope Number 3, and that the declarant marked the envelope "to identify it in the future," (2) the declaration of Juanita Robeson, dated December 30, 2009, stating that she sealed the envelope and

---

[3] Craig A. Marquiz marquizlaw@cox.net; Mark A. Hutchison mhutchison@hutchlegal.com, mcarnate@hutchlegal.com; Philip A. Kantor PRSAK@aya.yale.edu; Thomas R. Ryan (Terminated) tom@cicilialawoffice.com; Sid Leach sleach@swlaw.com, docket@swlaw.com, mzachow@swlaw.com, spalmer@swlaw.com; Paul Swenson Prior sprior@swlaw.com, DOCKET_LAS@swlaw.com, and wrudnick@swlaw.com; Jacob A. Reynolds jreynolds@hutchlegal.com, bpereira@hutchlegal.com

directed that it along with the two others be delivered to Mr. Marquiz, and that Laric Tolleson returned it to her on December 29, 2009, and (3) the declaration of Jacob A. Reynolds, Esq., dated December 30, 2009, stating that on December 29, 2009, Juanita Robeson returned the envelope to him and that it has remained in his office since that day. (Court's Exhibit 1). Court's Exhibit 1 is marked with a number "1" on the back of the envelope. *Id.*

The court stated during the hearing that there was no indication of tampering with the envelope or the database inside the envelope, and that the court accepted the declaration of counsel, an officer of the court, to be true. (#307 and #308). The court overrules plaintiffs' objection to the authenticity of Court's Exhibit 1. The court also finds that Court's Exhibit 1 is not "new evidence" as plaintiffs suggest. The parties agreed to the production of the third database and to the court receiving a copy of the database in August of 2009 (#218), before the dispute arose regarding plaintiffs' copy of the database. (#234). The three copies of the database were made and presented to plaintiffs' counsel on December 29, 2009, and plaintiffs' counsel chose plaintiffs' copy of the database on the same day. *Id.* After defense counsel chose the second copy, the third copy was kept for the court in a sealed envelope. *Id.* All of the foregoing was documented on the court's docket and occurred before plaintiffs disputed the condition of their copy of the database and before the issue was addressed by the court. *Id.* During the hearing before Judge Ezra on March 23, 2012, Mr. Reynolds raised the issue of the court's copy, and stated that he had "the Court's copy right here," leading this court to conclude that Court's Exhibit 1 was in the courtroom during the hearing (#275 March 23, 2012, Hearing Transcript). The third category of evidence this court was to consider was "the evidence proffered at the March 23, 2012, hearing on Defendants' Objections." (#276). Court's Exhibit 1 was clearly before the court at the March 23, 2012, hearing. (#275).

### 2.    Use of Sergey Sverchkov's **Report & Instructions**

Judge Ezra specifically stated in his order remanding the matter that defendants included Mr. Sverchkov's supplemental report in their objection to the R&R (#265), "which purportedly shows that the database was not corrupted but merely offline." (#276). Mr. Sverchkov attached instructions to his report (#265-4) titled "Steps to Configure Access to All Datafiles Including Users12.dbf." (#265-4 Exhibit 7). The transcript from the March 23, 2012, hearing demonstrates that Sverchkov's Report was discussed and presented as evidence before the court. (#275). Sverchkov's Report (#265-4) and attached instructions (Exhibit 7) were clearly within the bounds of the evidence for the court to consider, and fit in two of the three categories: "(2) the additional evidence submitted in support of and in opposition to Defendants' Objections to the Magistrate's R&R, and (3) the evidence proffered at the March 23, 2012, hearing on Defendants' Objections." (#276).

### B.    Did Defendants Fail to Produce the Database as Ordered by the Court?

Judge Ezra ordered the defendants to "turn over to opposing counsel an exact copy of the backup database (i.e., the database noted as "Database Server No. 2" in Doc. # 218 at 8) by September 7, 2009. An identical mirror image copy of the backup database is to be made and turned over to opposing counsel without any alterations, modifications or deletions, together with any necessary passwords required to access the information contained in the database." (#219). The parties do not dispute that defendants presented plaintiffs' counsel with three copies of the database in three sealed envelopes and plaintiffs' counsel was given first choice and selected one of the envelopes. (#234). This court must decide whether the plaintiffs' copy was altered, modified, or contained deletions. (#219).

During the December 11, 2012, evidentiary hearing before this court, defendants' expert Mr. Sverchkov used the instructions in Exhibit 7 to his report (#265-4) to demonstrate to the court that defendants' copy of the database, when mounted correctly, did not experience error messages and had

Users12.dbf "online."  (#307 and #308).  Mr. Sverchkov followed the instructions in Exhibit 7 and demonstrated the same outcome on the court's copy of the database, Court's Exhibit 1.  *Id.*  When Mr. Sverchkov followed the same instructions from Exhibit 7 and attempted to run plaintiffs' copy of the database, he received error messages and Users12.dbf was "offline."  *Id.*

The Users12.dbf on plaintiffs' copy of the database bore a date stamp of March 22, 2012.  *Id.*  Mr. Sverchkov testified and demonstrated to the court that such a date stamp indicated that the file Users12.dbf on that copy of the database was accessed and switched "offline" on that date  *Id.*

The court finds that the defendants produced a mirror image of the database as order by the court (#276) and that something done to the plaintiffs' copy of the database most likely on March 22, 2012, but certainly *after* it was produced to plaintiffs, caused Users12.dbf to be "offline."  As defendants complied with the court's order (#276), the court answers the first question in the negative.[4]  Accordingly, the court need not address issues of intent, willfulness, or bad faith.  As the court's order (#276) was not violated, terminating sanctions are not appropriate.

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that plaintiffs' request for terminating sanctions be DENIED.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

---

[4] The first question in the parties' Joint Pre-Hearing Statement was "A: Did the Defendants fail to produce the database as ordered by the Court?"  (#281).

held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 14th day of February, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE