IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| HOME GAMBLING NETWORK, INC., et al., | ) ) ) | 2:05-cv-00610-DAE-VCF |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CHRIS PICHE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION

Before the Court are the Objections to the Magistrate Judge's

February 14, 2013 Report and Recommendation brought by Plaintiffs Home

Gambling Network, Inc. ("HGN") and Mel Molnick (collectively, "Plaintiffs").

(Doc. # 313.)  After careful consideration, and for the reasons given below, the

Court **ADOPTS** the Magistrate Judge's February 14, 2013 Report and

Recommendation (doc. # 311).

BACKGROUND

On September 1, 1998, the United States Patent and Trademark Office

issued Patent No. 5,800,268, entitled "Method of Participating in a Live Casino

Game from a Remote Location" ("Method Patent"), to inventor Mel Molnick, who

subsequently assigned all rights in the Method Patent to HGN.  In 2003, Molnick,

the President of HGN, contacted Inversiones VS Dos Mil, S.A. d/b/a

casinowebcam.com ("CWC") to license the Method Patent.  Defendants CWC,

Eyeball Networks, Inc., and Chris Piche (collectively, "Defendants") entered into a

patent license agreement (the "HGN Contract") with HGN regarding the Method

Patent.  ("FAC," Doc. # 98 ¶¶ 24, 27.)  The HGN Contract granted Defendants a

license to use the Method Patent and, in turn, to grant sublicenses to other

companies.  (Id. ¶¶ 29–34.)

On July 10, 2006, Plaintiffs filed a First Amended Complaint against

Defendants, bringing a cause of action for patent infringement and various related

state-law claims.[1]  (FAC, Doc. # 98.)  Plaintiffs allege that CWC infringed their

Method Patent through CWC's operation of an online gambling website and the

production and distribution of online gambling software that permitted sports

betting, lottery, keno, and bingo games.  (Id. ¶¶ 88–89.)

I.      History of the Parties' Discovery Dispute

A discovery dispute arose from Plaintiffs' February 12, 2007 request

for the production of documents, and Plaintiffs filed a motion to compel on July

---

[1]  On March 27, 2007, the Court granted Defendants summary judgment as
to Count Two (Declaratory Judgment) and Count Seven (Conversion) of the First
Amended Complaint.  (Doc. # 143.)

31, 2007.  (<u>See</u> Doc. # 147.)  Magistrate Judge Lawrence R. Leavitt granted

Plaintiffs' motion on February 12, 2008 and ordered Defendants to provide

Plaintiffs with all responsive documents by March 11, 2008.  (Doc. # 154.)  After

Defendants claimed to have no responsive documents for some of Plaintiffs'

requests, Plaintiffs filed a motion for sanctions.  (Doc. # 156.)  On June 27, 2008, a

hearing was held on the motion before Magistrate Judge Leavitt, who ordered

Defendants to either produce the materials at issue by July 14, 2008, or have Piche

provide a detailed explanation in a sworn affidavit as to why the documents or

other materials had not been produced.  (Doc. # 168.)

On September 22, 2008, at Plaintiffs' request, Magistrate Judge

Leavitt held a status conference.  (Doc. # 183.)  At the conference, he authorized

Plaintiffs to depose Piche about all aspects of discovery in the case.  At Piche's

deposition, it was revealed that Defendants construed the term "documents" to

mean only <u>paper</u> documents rather than including electronically stored information.

(Doc. # 244 at 9.)

On February 9, 2009, Plaintiffs filed a sealed Status Report Regarding

Defendants Non-Compliance with Court Orders, seeking sanctions pursuant to

Rule 37(b)(2) for violations of court discovery orders.  (Doc. # 188 at 24.)  On

March 20, 2009, Defendants' counsel filed an Emergency Motion to Withdraw as

Counsel of Record for Defendants, which the Court granted on April 6, 2009.

(Docs. ## 199, 207.)  After a hearing, Magistrate Judge Leavitt issued an order

granting Plaintiffs' request for sanctions against Defendants on July 20, 2009.

(Doc. # 210.)  He ordered Defendants to pay the reasonable expenses, including

attorneys' fees and costs, incurred by Plaintiffs in making various filings[2];

conducting the discovery compliance deposition of Piche on November 3, 2008;

and preparing for and participating in the September 22, 2008 and March 2, 2009

discovery hearings.  (Id. at 10.)

On July 31, 2009, Defendants filed an Objection to Magistrate Judge

Leavitt's July 20, 2009 Order.   (Doc. # 211.)  The Court held a status conference

on August 5, 2009 and ordered that the attorneys' fees sanctions be put on hold

until the end of the case, but affirmed the Magistrate Judge's order that the

documents be produced.  (Doc. # 241, Ex. 1 at 12–13.)  Importantly, the

undersigned also ordered Defendants to comply with the Magistrate Judge's order

to produce an "identical mirror image copy of the backup database . . . without any

alterations, modifications or deletions, together with any necessary passwords

---

[2]  The Court ordered Defendants to pay Plaintiffs' reasonable expenses in
connection with the filing of docket entries 147, 150, 156, 157, 160, 173, 178, 188,
194, 195, and 196.  (Doc. # 210 at 10.)

4

required to access the information contained in the database" by September 7, 2009.  (Doc. # 219 at 2.)

On August 11, 2009, Defendants requested that a copy of the Database be held by the Court "as a means of preempting any frivolous motion challenging the sufficiency of the production or any alleged modification of the database."  (Doc. # 234; see also Doc. # 216.)  Plaintiffs stated that they did "not object to the Defendants' request to deposit an additional copy of their database with the Court."  (Doc. # 218 at 16:12–14.)  Defendants then prepared three copies of the database, which they marked and sealed in their original boxes on September 8, 2009.  (Doc. # 234 ("Reynolds Decl.") ¶ 3.)  On December 29, 2009, Defendants gave Plaintiffs first choice of any of the three sealed boxes, kept a box for themselves, and asked that the extra box be deposited with the Court.  (Id.)  Plaintiffs' counsel, Craig Marquiz ("Marquiz"), had the opportunity to sign and date the seal of the envelopes at the time of selection, but chose instead to have counsel for Defendants submit a declaration about what had occurred.  (Id.)

On April 15, 2010, Plaintiffs' expert, Chris Beall ("Beall"), received a sealed copy of Defendants' database from Marquiz.  ("Beall Decl.," Doc. # 240, Ex. A ¶ 6.)  Beall determined that he did not have adequate information to access and analyze the contents of the database.  (Id. ¶ 10–12.)  When Beall asked

Marquiz if Defendants provided any other instructions or directions, Marquiz advised that everything necessary to access the database was contained in the file already provided to them.  (Id. ¶¶ 19–20.)

During his examination of the database, Beall ran certain queries that generated various error messages.  (Id. ¶¶ 41, 43–46.)  Beall determined "to a reasonable degree of scientific certainty" that Defendants' "customer table" had been altered, modified, manipulated, or otherwise contained errors.  (Id. ¶ 59.) Marquiz contacted defense counsel, Jacob Reynolds ("Reynolds"), regarding this problem but was unable to determine what was wrong with the produced database. (See Doc. # 240, Exs. C, D.)

On July 28, 2010, Plaintiffs filed a Status Report, stating that the database produced by Defendants "appears to have been altered modified, manipulated, or was produced with errors in it . . . " (Doc. # 240.)  Soon thereafter, Plaintiffs filed a Request for an Expedited Status Conference/Evidentiary Hearing Regarding Defendants' Database.  (Doc. # 241.)  On August 13, 2010, Defendants filed a Response, averring that Plaintiffs misrepresented efforts to resolve concerns with the database.  (Doc. # 243.)  In a declaration attached to the Response, Piche explained—for the first time—that "there are errors that are resident in the database." ("Piche Decl.," Doc. #243-4 ¶ 4.)  Piche further stated:

6

> I wish to underscore that these errors also reside in the database that is used by CWC, not just the copies that were produced in response to discovery requests in this action.  The errors resulted from one or more separate events occurring during the time Michael McConnell was in charge of our database (McConnell is no longer with our company): (1) a crash that occurred in early August 2009, when our server lost power while writing to its disk drives; and/or (2) several instances when the Oracle database ran out of disk space while writing to its disk drives.

(Id. ¶ 5.)  Piche explained that "though we could have attempted to fix these errors on the original database, we did not do so, because counsel advised us not to modify the database before producing it for this litigation."  (Id. ¶ 11.)

Magistrate Judge Leavitt held a discovery hearing on February 14, 2011, and an evidentiary hearing on February 17, 2011, after which he ordered the parties to submit briefs.  (Docs. ## 257–58.)

Plaintiffs noted that Piche testified that the information in Defendants' electronic database is searchable by entering specific queries.  (Doc. # 260 at 5 (citing Doc. # 173-2 at 2 ¶ 6).)  However, Plaintiffs argued that "the corrupt inoperable copy of the database produced to Plaintiffs was not searchable, unless you limited your search, for example, to certain partial incomplete searches of only a limited number of records."  (Id.)  Plaintiffs contended that key tables in the database were offline, which rendered certain files inaccessible.  (Id.)  Plaintiffs also questioned whether Defendants produced an exact copy of their production

database to Plaintiffs because that would mean Defendants were using a corrupted database between August 9, 2009 and August 25, 2009. (Id. at 11.) Plaintiffs further argued that although the undersigned ordered Defendants to produce a copy of their database and immediately notify the Court of any problems, Defendants did not mention the alleged database crash until August 2010—namely, after Plaintiffs submitted a status report concerning the database copy. (Id. at 260.)

Defendants asserted that "the accumulated record of noncompliance to which plaintiffs repeatedly refer was decisively broken when defendants switched counsel to the Hutchison & Steffen firm." (Doc. # 261 at 2.) Defendants also argued that only 1.4% of the records in the database were inaccessible and that "these records are simply not consequential enough to alter the outcome of the action." (Id. at 3.) Defendants further contended that Plaintiffs did not try to resolve concerns over the database in good faith before seeking court intervention. (Id. at 3, 33.)

On August 12, 2011, Magistrate Judge Leavitt issued a Report and Recommendation that Plaintiffs' Motion for Terminating Sanctions be granted, that Defendants' Answer be stricken, and that a default judgment be entered against Defendants. (Doc. # 262 at 15.) On August 29, 2011, Defendants filed an Objection to Magistrate Judge's Report & Recommendations (doc. # 265), to

which Plaintiffs filed a Response in opposition (doc. # 267).

On March 23, 2012, the Court held a hearing on Defendants' Objection to the Magistrate Judge's Report and Recommendation.  On May 14, 2012, this Court issued an Order Vacating the Magistrate's Report and Recommendation.  (Doc. # 276.)  The Court found that both sides proffered additional evidence not before Magistrate Judge Leavitt when he ruled on Plaintiffs' Motion for Terminating Sanctions.  (Id.)  More specifically, Defendants offered a supplemental report from their expert, Sergey Sverchkov, purportedly showing the database was not corrupted, but merely "offline."  (Id.)  Plaintiffs offered new evidence that the alleged database crash occurred hours after the hearing on August 5, 2009.  (Id.)  Accordingly, this Court remanded the matter to newly-assigned Magistrate Judge Cam Ferenbach for the purpose of conducting a new evidentiary hearing and issuing a new Report and Recommendation based on a complete record.  (Id.)

The Court further warned that "this is not an opportunity for the parties to procure additional experts or advance new theories about what happened to the database."  (Id.)  To that end, the Court ordered that the Magistrate Judge consider only the following categories of evidence: (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating

9

Sanctions, (2) the additional evidence submitted in support of and in opposition to

Defendants' Objections to the Magistrate's Report and Recommendation, and (3)

the evidence proffered at the March 23, 2012 hearing on Defendants' Objections.

(Id.)

II.    New Evidentiary Hearing and Procedural History

        On December 11, 2012, Magistrate Judge Ferenbach held a new

evidentiary hearing on Plaintiffs' Motion for Terminating Sanctions.  (See Docs.

## 307, 308.)  Prior to the hearing, the parties produced a Joint Pre-Hearing

Statement providing that the issues to be decided at the new evidentiary hearing

were:

     A.     Did the Defendants fail to produce the database as ordered by the
          Court?

     B.     If yes, was Defendants' failure to do so intentional, willful, or in bad
          faith?

     C.     Are terminating sanctions appropriate?

(Doc. # 281.)  The parties also filed a series of pre-hearing briefs.  (Docs.

## 283, 288, 294.)  Pursuant to an order of the Magistrate Judge, the parties further

submitted simultaneous post-hearing briefs focusing on whether Defendants failed

to produce a mirror image of the database as ordered by the Court.  (Docs. ## 307,

309–10.)

10

On February 14, 2013, Magistrate Judge Ferenbach issued a Report

and Recommendation that Plaintiffs' Motion for Terminating Sanctions be denied.

(Doc. # 311.)  Soon thereafter, on February 28, 2013, Plaintiffs filed Objections to

the Magistrate's Report and Recommendation.  (Doc. # 313.)  Defendants filed a

Response to Plaintiffs' Objections to Magistrate Report and Recommendation on

March 22, 2013.  (Doc. # 320.)

<u>STANDARD OF REVIEW</u>

A party may file and serve specific written objections to the findings

and recommendations of a United States Magistrate Judge made pursuant to Local

Rule IB 1-4.  28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2.  Upon the filing of such

objections, the district court must make a de novo determination of those portions

of the findings or recommendations to which objection is made.  Local Rule IB 3-

2(b).  De novo review means that the court must consider the matter anew, the

same as if it had not been heard before and as if no decision previously had been

rendered.  <u>Ness v. Commissioner</u>, 954 F.2d 1495, 1497 (9th Cir. 1992).

"The court may 'accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate.'  The court also may receive

further evidence or recommit the matter to the magistrate with instructions."

<u>McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.</u>, 656 F.2d 1309, 1313

(9th Cir. 1981) (citation omitted); Local Rule IB 3-2(b).  "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."  U.S. v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).

<u>DISCUSSION</u>

Plaintiffs make three main arguments in their Objections to the Magistrate Judge's February 14, 2013 Report and Recommendation.  First, they contend that Defendants were allowed to present new evidence at the December 11, 2012 evidentiary hearing in violation of this Court's May 14, 2012 Order.  Second, Plaintiffs maintain that they were denied any opportunity to rebut this new evidence.  Third, Plaintiffs argue that they were not given an opportunity to re-present the evidence that was before Magistrate Judge Leavitt.  For the reasons that follow, the Court overrules Plaintiffs' objections and adopts the Report and Recommendation of the Magistrate Judge.

I.    <u>Whether Defendants Were Allowed to Present "New" Evidence</u>

As described above, the undersigned instructed the Magistrate Judge only to consider the following categories of evidence: (1) the evidence that was before Magistrate Judge Leavitt when he ruled on the Motion for Terminating Sanctions, (2) the additional evidence submitted in support of and in opposition to

12

Defendants' Objections to the Magistrate's Report and Recommendation, and (3)
the evidence proffered at the March 23, 2012 hearing on Defendants' Objections.

　　　　　Plaintiffs claim that Defendants improperly advanced a "new theory"
that the database was not corrupted, but merely "offline" and accessible if properly
mounted.  However, this was the theory advanced by Defendants' expert, Sergey
Sverchkov, in a supplemental report to Defendants' Objection to Magistrate Judge
Leavitt's Report and Recommendation.  Accordingly, it falls easily within the
second category of permissible evidence outlined by the Court.  In fact,
Sverchkov's report was the primary reason that this Court vacated the Report and
Recommendation of Magistrate Judge Leavitt and ordered a new evidentiary
hearing.  (See Doc. # 276 at 11–12 (finding Sverchkov's report was "plainly
relevant" to "whether the CWC Defendants tampered with the database before
producing it to Plaintiffs").)  Indeed, based on this Court's May 14, 2012 Order,
the Magistrate Judge would have been remiss not to consider the theory advanced
in Sverchkov's report.  Thus, Plaintiffs' objection is overruled in this respect.

　　　　　Plaintiffs also contend that Defendants' theory, as outlined in
Sverchkov's report, impermissibly differs from testimony presented to Magistrate
Judge Leavitt by Defendants' witness, Chris Piche, and expert, Rick Virmani.
According to Plaintiffs, in this prior testimony, Defendants essentially concede that

13

the database is "corrupted."  However, it was precisely because Sverchkov's report

differed from prior testimony before Magistrate Judge Leavitt that this Court

ordered a new evidentiary hearing to consider the theory.  That the database was

merely "offline" and not corrupted became Defendants' new theory, and it is not

precluded merely because Defendants previously believed that database may have

been corrupted.

Finally, Plaintiffs contend that the Magistrate Judge improperly

allowed new evidence "in the form of a hard drive that was marked as Court's

Exhibit 1."  (Doc. # 313 at 21.)  As described above, when Defendants prepared to

give Plaintiffs a mirror-image copy of the database, they made three copies which

were marked and sealed in their original boxes on September 8, 2009.  On

December 29, 2009, Defendants gave Plaintiffs their choice of any of the three,

kept a copy for themselves, and requested that the extra copy of the database be

deposited with the Court.  Before the Court ruled on the request, Defendants, with

the agreement of Plaintiffs' counsel, prepared Doc. # 234 stating how the Court's

copy would be held sealed in the original box in the custody of Defendants'

counsel pending the Court's ruling.  The Magistrate Judge ordered that the copy be

given to the Court, and it was introduced into evidence as Exhibit 1.

Admission of the Court's copy of the database was not in error.  The

14

Court's copy of the database was previously present, although unused, at the hearing before Magistrate Judge Leavitt. (Tr. Hr'g Feb. 11, 2011 at 242:11.) In fact, Defendants offered it to Judge Leavitt for analysis, in addition to offering to pay for a court-appointed independent expert to analyze the copy. (Tr. Hr'g Dec. 22, 2010 at 30:23–31:19.) The copy was also present at the hearing before the undersigned on March 23, 2012. (Doc. # 311 at 23.) Thus, the Court concludes that this evidence was not "new" in the sense prohibited by the Court's May 14, 2012 Order, and the Magistrate Judge did not improperly admit this evidence at the December 11, 2012 hearing.

It is true that new facts came to light at the December 11, 2012 hearing through the use of Exhibit 1. The Magistrate Judge ordered that, using the Court's copy of the database, Defendants' expert Sverchkov follow the steps outlined in his expert report to determine whether the database was truly "offline." (Doc. # 331 at 9.) The Magistrate Judge reasoned that the Court's copy would be a good "control" test. (Id. at 10.) After following the steps outlined in his report, Sverchkov was able to switch Users12.dbf from "offline" to "online." (Id. at 9.) The Magistrate Judge then ordered that the same be done on Plaintiffs' copy of the database. However, after following the same steps, Sverchkov was unable to make Plaintiffs' copy of Users12.dbf switch "online."

In his Report and Recommendation, the Magistrate Judge concluded that, because there was no reason to question the authenticity of the Judge's copy of the database, Defendants adequately demonstrated that they produced the database to Plaintiffs.  Plaintiffs maintain that this is an impermissible "new theory" because the implication is that something "happened" to Plaintiffs' copy of the database <u>after</u> being in Plaintiffs' custody.  In fact, this is merely an extension of Defendants' theory that the database was not corrupt, but merely offline, and is a logical, permissible inference given the evidence.  Thus, the Court overrules Plaintiffs' objections that the Magistrate Judge's opinion rests on an impermissible, "new" theory.[3]

II.    <u>Whether Plaintiffs Were Allowed to Present Rebuttal Evidence</u>

Plaintiffs argue that they were denied a meaningful opportunity to present rebuttal evidence.  However, the record belies this argument.  For example, Plaintiffs showed in open court that their copy of the database, Users12.bdf, continued to be "offline" despite the fact that Sverchkov's instructions were

---

[3]  It also came to light at the hearing that Plaintiffs' copy of the database was time stamped with the date of March 22, 2012.  Thus, this indicates that, one day prior to the hearing before the undersigned on March 23, 2012, Plaintiffs' expert followed Sverchkov's instructions and successfully switched Users12.dbf to "online" or, at the very least, the database was altered in some way.  (Doc. # 311 at 10–11.)  By contrast, all user files on the Court's copy of the database were date stamped with the date of either September 3 or September 4, 2009.  (<u>Id.</u>)

followed.  Plaintiffs argued to the Magistrate Judge that this evidence of their copy <u>not</u> working rebuts a finding of compliance with the Court's order that Defendants produce the database.  However, the Magistrate Judge simply found this argument not to be persuasive.  Additionally, Plaintiffs maintain that the error message generated at the December 11, 2012 hearing is consistent with previous testimony before Magistrate Judge Leavitt that Plaintiffs needed access to "Redo logs" in order to fix the "corrupted" copy of the database.  However, this does not change the fact that the Court's control copy of the database was shown not to be "corrupt."  Thus, the Court finds that the holding of the Magistrate Judge is supported by the evidence and declines to overturn it on this basis.

Plaintiffs also object that they were prevented from presenting rebuttal evidence in the form of testimony from expert Rick Virmani.  They assert: "The absence of Defendants' expert Rick Virmani from the December 11, 2012 hearing effectively denied Plaintiffs the opportunity to present testimony that was before Magistrate Judge Leavitt and which as an important part of Plaintiffs rebuttal." (Doc. # 313 at 12.)  Plaintiffs represent that it was Defendants' fault that Virmani was not present at the hearing and that the Court ordered Virmani to be at the hearing.  However, an examination of the full transcript of the pre-hearing conference makes clear that Plaintiffs' representations are not accurate.  At the pre-

17

hearing conference, the Magistrate Judge actually clarified that he could <u>not</u> order Defendants' counsel to bring Virmani to the hearing and recommended that Plaintiffs subpoena Virmani.  (Tr. Hr'g, Oct. 19, 2012 at 14:3–8; 15:2–9.)  Thus, Plaintiffs' inability to use Virmani as a rebuttal witness was not due to any wrongdoing by Defendants, but was the result of their own failure to subpoena him as a witness.

Finally, Plaintiffs contend that they were denied the opportunity to present rebuttal evidence because the Magistrate Judge limited their post-hearing briefs to eight pages and the briefs were due a mere seven days following the hearing.  This argument fails because these limitations applied equally to Defendants.  Thus, the Court overrules Plaintiffs' objections as to rebuttal evidence.

III.   <u>Whether Plaintiffs Were Permitted to Re-Present Prior Evidence</u>

Plaintiffs contend they were not adequately permitted to re-present evidence that was before Magistrate Judge Leavitt.  However, Plaintiffs re-presented evidence in the parties' Joint Pre-Hearing Statement, in which Plaintiffs submitted lengthy arguments and proposed findings of fact.  Plaintiffs also re-presented past evidence in their opening brief and reply brief.  In fact, it was the Magistrate Judge's review of these pre-hearing filings that prompted him to focus

on what he considered the "critical threshold issue"—namely, whether "the database was not corrupted but merely [off]line"—at the evidentiary hearing. (See "Tr Hr'g Oct. 19, 2010," Doc. # 306 at 3:13–4:20.) Thus, Plaintiffs' true objection appears to be that the Magistrate Judge chose to focus the December 11, 2012 evidentiary hearing on the issue that he believed to be dispositive; a decision he made <u>after</u> taking into account Plaintiffs' submitted re-presentation of evidence before Magistrate Judge Leavitt. This is hardly warrants reversal of the Magistrate Judge's Report and Recommendation. The Court finds that Plaintiffs were afforded an adequate opportunity to re-present evidence to the Magistrate Judge.

Additionally, to the extent Plaintiffs contend that the Magistrate Judge's Report and Recommendation "does not discuss the record before Magistrate Judge Leavitt," this is incorrect. (<u>See</u> Doc. # 313 at 3.) The Magistrate Judge expressly acknowledged past evidence; for example, he explained that "the defendants did make some [past] statements . . . that agreed with the concept that the database was corrupted and came up with explanations and so on." (Doc. # 311.)

Finally, the Court notes that all of Plaintiffs' various objections go the procedural fairness of the December 11, 2012 hearing. Plaintiffs have not explained why the Magistrate Judge's holding is actually incorrect or how the

strong policy favoring the disposition of cases on the merits is overcome in this

case.  See United States v. Signed Personal Check No. 730 of Yubran S. Mesle,

615 F.3d 1085, 1091 (9th Cir. 2010) ("Due to the policy of favoring judgments on

the merits, a glaring abuse of discretion is not required for reversal of a court's

refusal to relieve a party of the harsh sanction of default."); see also Commodity

Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 775–76 (9th

Cir. 1995) ("Entering a default judgment against a defendant as a discovery

sanction precludes him from defending against the allegations raised against him.

This court has refrained from imposing this very severe penalty in all but the most

extreme cases.").  Plaintiffs' objections are, accordingly, overruled in their entirety.

<u>CONCLUSION</u>

        For the reasons stated above, the Court **ADOPTS** the Report and

Recommendation of the Magistrate Judge.  (Doc. # 311.)

        IT IS SO ORDERED.

        DATED: Las Vegas, Nevada, September 30, 2013.

_____
David Alan Ezra
Senior United States District Judge