IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| HOME GAMBLING NETWORK, INC., et al., | ) ) ) | No. 2:05-CV-610-DAE |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CHRIS PICHE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR AWARD OF
<u>ATTORNEYS' FEES AND COSTS</u>

Before the Court is the Motion for Attorneys' Fees and Costs (Dkt.
# 337) brought by Defendants Chris Piche, Inversiones VS Dos Mil, S.A. d/b/a
casinowebcam.com ("CWC"), and Eyeball Networks, Inc. (collectively,
"Defendants").  After reviewing the Motion and the supporting and opposing
memoranda, the Court **GRANTS** Defendants' Motion for Attorneys' Fees and
Costs.

<u>BACKGROUND</u>

I.    <u>Factual Background</u>

On September 1, 1998, the United States Patent and Trademark Office

issued Patent No. 5,800,268, entitled "Method of Participating in a Live Casino Game from a Remote Location" (the "Method Patent"), to inventor Mel Molnick, who subsequently assigned all rights in the Method Patent to HGN.   (See Dkt. # 98 ("FAC") ¶ 12.)   In 2003, Molnick, the President of HGN, contacted CWC to license the Method Patent.   (Id. ¶ 4.)   On November 25, 2003, CWC entered into five license agreements with Plaintiffs, which were superseded by a patent license agreement (the "HGN Contract") on August 10, 2004.   (Id. ¶¶ 24, 27.)

The HGN Contract granted Defendants a license to use the Method Patent and, in turn, to grant sublicenses to other companies.   (Id. ¶¶ 29–34.) More specifically, the Contract gave CWC "a perpetual, exclusive, royalty-free worldwide license to use the Licensed Technology" and the right "to grant sublicenses therein to CWC Resellers, CWC Licensees, and End Users."   (Dkt. # 111-3 ("HGN Contract") § 2.1.)   The HGN Contract also expressly provided that "[n]o further approval or documentation" was "required" from Plaintiffs with respect to the granting of sublicenses.   (Id.)   The HGN Contract further defined "CWC Software" as "any software owned or licensed by CWC, which CWC makes generally available to its customers, and which enables CWC and CWC Licensees to provide any games over computer networks to end users, excluding Bingo, Keno, Lottery and all sporting events."   (Id. § 1.4 (emphasis added).)

Pursuant to the HGN Contract, CWC used the Method Patent in

2

conjunction with online gambling operations.   (See Dkt. # 312-5 ("Piche Decl.") ¶ 3.)   CWC ran a "live webcam casino" (the "Live Casino"), which functioned like any other casino except that it was outfitted with digital cameras to allow physically remote customers to view and interact with the casino, which was located in Costa Rica, through the internet.   (Id.)   Players could access the Live Casino through the website www.casinowebcam.com.   (Id.)   CWC also ran a related business that offered licenses to third-party online gaming websites, allowing them to use CWC software to offer live webcam casino gaming without needing to operate their own "live" casinos.   (Id.)   At all relevant times, CWC's computer servers, which hosted the online games, and the employees of the Live Casino were located in Costa Rica.   (Id.; see also FAC ¶¶ 5, 7 (admitting that Defendants are all foreign individuals or entities and that CWC was a Costa Rican business with its principal place of business in Costa Rica); Dkt. # 274 ("Beall Decl.") Ex. 1 ¶ 1 (claiming servers recorded time in their local Costa Rica time).)

II.   Procedural Background

On July 10, 2006, Plaintiffs filed a First Amended Complaint, alleging, among other things, that CWC infringed their Method Patent through CWC's operation of an online gambling website and its production and distribution of online gambling software, all of which permitted sports betting, lottery, keno, and bingo games.   (FAC ¶¶ 88–89.)   While recognizing that Defendants had the

right to grant sublicenses under the HGN Contract, Plaintiffs asserted that CWC improperly sublicensed its software without excluding bingo, keno, lottery, and sports betting.   (Id. ¶¶ 112–14.)

On August 10, 2006, Defendants filed a Motion for Summary Judgment on all counts of the First Amended Complaint.   (Dkt. # 111.)   On March 30, 2007, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment.   (Dkt. # 143.)   The Court granted summary judgment as to Count Two (Declaratory Judgment) and Count Seven (Conversion) of the First Amended Complaint.   (Id.)   The Court denied summary judgment as to Count One (Patent Infringement), Count Three (Preliminary and Permanent Injunction), Count Four (Accounting), Count Five (Breach of Contract), and Count Six (Intentional Interference with Contractual Relationships).   (Id.)

Approximately six years later, on February 27, 2013, Defendants filed a second Motion for Summary Judgment contending that "the record is ripe for summary judgment on the remaining counts of the complaint."   (Dkt. # 312 at 2.) Plaintiffs filed a Preliminary Response to Defendants' Motion for Summary Judgment Motion.   (Dkt. # 324.)   On May 17, 2013, Defendants filed a reply in support of their Motion for Summary Judgment.   (Dkt. # 328.)

On September 30, 2013, this Court granted Defendants' Motion for

Summary Judgment in its entirety, dismissing all of Plaintiffs' claims.   (Dkt. # 333.)   In relevant part, the Court concluded that (1) there was no liability under 35 U.S.C. § 271(a) because at least one of the method steps was performed outside the United States (id. at 16); (2) there was no inducement to infringe the patent because there was no direct infringement of a patent (id.); (3) Defendants did not infringe the Method Patent by operating a website and licensing software that permitted sports betting, lottery, keno, and bingo games because these activities are excluded from the Method Patent pursuant to the prosecution history disclaimer (id. at 23); and (4) there was no contractual liability of Defendants because the HGN Contract did not prevent CWC from licensing the CWC Software to third parties for bingo, keno, lottery or sporting events (id. at 25).   Importantly, the Court found that Plaintiffs purposefully attempted to exclude subject matter that was beyond the scope of the Method Patent from the license granted to CWC, so that they could license that subject matter to others for money.   (Id. at 26.)

Defendants have now filed the instant Motion for Attorney Fees and Costs.   ("Mot.," Dkt. # 337.)   Defendants assert that they are entitled to a total award of $1,806,416.59.   (Id. at 1.)   Defendants argue that (1) this case is an "exceptional" case, entitling them to attorneys' fees pursuant to 35 U.S.C. § 285; (2) they are entitled to their attorneys' fees, costs and double damages under the patent license agreement; and (3) the attorneys' fees, costs, and damages claimed

5

are reasonable.   (<u>Id.</u>)

Plaintiffs filed an Opposition to Defendants' Motion for Attorneys' Fees and Costs ("Resp.," Dkt. # 347) arguing that (1) this case does not meet the "objectively baseless" standard required for an award of attorney fees under 35 U.S.C. § 285, and (2) Defendants have not met their burden of establishing an exceptional case by clear and convincing evidence.   (<u>Id.</u>)   Defendants filed a Reply in Support of Defendants' Motion for Attorney Fees and Costs.   (Dkt. # 350.)

On April 29, 2014, in light of the opinions of the United States Supreme Court in <u>Octane Fitness, LLC v. Icon Health & Fitness, Inc.</u>, No. 12-1184, 134 S. Ct. 1749 (Apr. 29, 2014) and <u>Highmark Inc. v. Allcare Management System, Inc.</u>, No. 12-1163, 134 S. Ct. 1744 (Apr. 29, 2014), the Court ordered the parties to submit simultaneous supplemental briefing.[1]   (Dkt. # 358.)   Defendants filed their supplemental brief on May 6, 2014 (Dkt. # 360), and Plaintiffs filed their supplemental brief on May 7, 2014 (Dkt. # 363). Defendants' Motion for Attorneys' Fees and Costs is now before the Court.

---

[1]  The Court notes that the supplemental briefs did not completely supplant the original motions; the Court has considered the arguments and facts presented in both the supplement briefing and in the original briefing to the extent it is relevant and helpful.

ANALYSIS

I.    Awarding Attorney Fees for an "Exceptional Case" Under 35 U.S.C. § 285

Section 285 of title 35 of the United States Code provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.   "The purpose of section 285 is to prevent injustice by compensating the prevailing party for its monetary outlays in prosecution or defense of a suit where the conduct of the losing party is clearly inequitable." Multi-Tech, Inc. v. Components, Inc., 708 F. Supp. 615, 620 (D. Del. 1989) (citing Rohm & Haas Co. v. Crystal Chem. Co., 736 F.2d 688, 692 (Fed. Cir. 1984)).

Prior to the Supreme Court's opinions in Octane Fitness, LLC v. Icon Health & Fitness, Inc., No. 12-1184, 134 S. Ct. 1749 (Apr. 29, 2014) and Highmark Inc. v. Allcare Management System, Inc., No. 12-1163, 134 S. Ct. 1744 (Apr. 29, 2014), a party requesting attorneys' fees was required to establish the exceptionality of a case by clear and convincing evidence.   See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1383 (Fed. Cir. 2005).

As set forth in Brooks Furniture, 393 F.3d 1378 (Fed. Cir. 2005), an award of attorneys' fees was permissible "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R.

7

Civ. P. 11, or like infractions."   Id.   Thus, absent misconduct during patent

litigation or prosecution, attorneys' fees could be imposed pursuant to § 285 "only

if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is

objectively baseless."   Brooks Furniture, 393 F.3d at 1381 (citing Prof'l Real

Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993)).

Two recent opinions of the United States Supreme Court have

overruled Brooks Furniture's "subjective bad faith/objectively baseless" standard.

In Octane Fitness, the Supreme Court held that the Brooks Furniture framework is

"unduly rigid" and "impermissibly encumbers the statutory grant of discretion to

district courts."   134 S. Ct. at 1755.   The Court noted that its analysis begins and

ends with the text of § 285 which simply provides: "The court in exceptional cases

may award reasonable attorney fees to the prevailing party."   Id. at 1755–56

(citing 25 U.S.C. § 285).   The Court noted:

> This text is patently clear.   It imposes one and only one constraint on
> district courts' discretion to award attorney's fees in patent litigation:
> The power is reserved for "exceptional cases." [2]

Id. at 1756.   Thus, the Court redefined the confusing and rigid Brooks Furniture

framework for determining whether an award of attorneys' fees is provided for

---

[2]  Because the Patent Act did not define "exceptional," the Court construed it "in
accordance [its] ordinary meaning."   Octane Fitness, 134 S. Ct. at 1756.   In
1952, when Congress used the term, it was defined as "uncommon," "rare," or "not
ordinary."   Id. (citing Webster's New International Dictionary 889 (2d ed. 1934).

under § 285.   In doing so, the Court espoused a new standard of determining

whether a case is "exceptional" that is consistent with the statutory language:

> We hold, then, that an "exceptional" case is simply one that stands out
> from others with respect to the substantive strength of a party's
> litigating position (considering both the governing law and the facts of
> the case) or the unreasonable manner in which the case was litigated.

Id.

Further, the Court rejected the Federal Circuit's requirement that

patent litigants establish their entitlement to fees under § 285 by "clear and

convincing evidence," concluding that "nothing in § 285 justifies such a high

standard of proof."   Id. at 1758.   The Court noted:

> Section 285 demands a simply discretionary inquiry; it imposes no
> specific evidentiary burden, much less a high one.   Indeed,
> patent-infringement litigation has always been governed by a
> preponderance of the evidence standard.

Id. (citing Bene v. Jeantet, 129 U.S. 683, 688 (1889)).

In Highmark, issued the same day, the Supreme Court repeated that

the determination whether a case is "exceptional" under § 285 is a matter of

discretion.   Highmark, 134 S. Ct. 1744 at 1748.   Further, the Court held that the

exceptional-case determination is to be reviewed only for abuse of discretion on

appeal.   Id.

In accordance with the standard set forth in Octane Fitness and

Highmark, "[d]istrict courts may determine whether a case is 'exceptional' in the

9

case-by-case exercise of their discretion, considering the <u>totality of the</u> <u>circumstances</u>."   <u>Octane</u>, 134 S. Ct. at 1756.   Thus, the question before the Court is whether this case is "exceptional" such that Defendants, as the prevailing party in this suit, are entitled to an award of attorneys' fees pursuant to § 285.

Defendants' central argument as to why this case is "exceptional" is, essentially, that Plaintiffs were "unjustified in bringing the instant action" and "should have known it had no chance of success."   (Mot. at 3.)   Defendants assert that the Plaintiffs should have known their patent infringement claim would fail as a matter of law and, thus, that they were unjustified in bringing the action against them.

In their first amended complaint, Plaintiffs alleged that CWC infringed their Method Patent through CWC's operation of an online gambling website and its production and distribution of online gambling software, all of which permitted sports betting, lottery, keno, and bingo games.   (FAC ¶¶ 88–89.) In their Motion for Summary Judgment, Defendants argued that they were not liable for patent infringement (1) because they never used all steps of the Method Patent in the United States, and (2) because the Method Patent does not cover "bingo, keno, lottery or sports betting" under the doctrine of "file wrapper

estoppel."[3]   (Dkt. # 312.)   In granting summary judgment, the Court concluded

that Plaintiffs' patent infringement claims failed as a matter of law on two separate

grounds: (1) because all steps of the Method Patent were not performed within the

United States, there could be no infringement of the United State Method Patent by

the CWC licensee[4], (Dkt. # 333 at 13) and (2) the accused infringement was not

covered by the Method Patent under the doctrine of "prosecution history

disclaimer" (id. at 23).   Defendants claim that both of these grounds for finding

non-infringement were apparent to Plaintiffs at the time they filed the amended

complaint in this action and, thus, this Court should find this case "exceptional"

and award Defendants attorneys' fees.   (Mot. at 3.)

   A.   <u>All Steps Not Performed Within the United States</u>

       In their Motion for Summary Judgment, Defendants argued that they

were not liable for patent infringement because they never used all steps of the

Method Patent in the United States.   The Court agreed, concluding that based

upon <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 418 F.3d 1282 (Fed. Cir. 2005),

Plaintiffs' infringement claim failed because not all of the method steps were

---

[3] Plaintiffs argue that the Court granted summary judgment on grounds that were
never raised by Defendants.   (Dkt. # 347 at 3.)   However, that assertion is
incorrect.

[4] Further, because there was no direct infringement by Defendants, the Court also
concluded that Plaintiffs' claim of inducement to infringement failed as a matter of
law.   (Dkt. # 312 at 19.)

performed in the United States.

In <u>NTP</u>, the Federal Circuit concluded that conduct occurring outside of the United States cannot infringe a method covered by a United States patent. In other words, <u>all</u> steps of the method patent must be performed within the United States in order to be liable for patent infringement of a United States Patent.   (<u>Id.</u> at 1318.)   Because there was no dispute that the Live Casino and computer servers making it available to players around the world were at all times located in Costa Rica (<u>See</u> Piche Decl. ¶ 4; FAC 89), this Court concluded that Plaintiffs' claim for patent infringement failed.   (Dkt. # 312 at 13 ("The players had to interact with the Live Casino to have their wagers processed, etc., through CWC's facilities in Costa Rica.   Thus, at no point was every step of Plaintiffs' method practiced in the United States.").)

Now, in their arguments for why this case is "exceptional" pursuant to § 285, Defendants argue that in light of <u>NTP</u>, Plaintiffs should have known that to the extent their infringement claim was premised on live webcam casino operations that Defendants were performing overseas, it could not be successful.   (Mot. at 3–4.)   Defendants assert that Plaintiffs' Amended Complaint, filed on July 10, 2006, was filed <u>after</u> the <u>NTP</u> decision was handed down and, thus, Plaintiffs' claim was submitted in bad faith because they should have known it had no chance of success.   (<u>Id.</u> at 3.)   Indeed, <u>NTP</u> was handed down on August 2, 2005, and

12

Plaintiffs' never contested the fact that portions of the Defendants' operations were conducted in Costa Rica.   (See FAC ¶ 89.)

Defendants further argue that NTP was "not an obscure legal development," but rather "provoked a general business and social crisis" due to the subject matter—BLACKBERRY® phones.   (Mot. at 4.)   Defendants assert that the Court should take judicial notice of "the widespread, common knowledge of the NTP case and its legal effect, as it was widely disseminated through news channels and affected every BLACKBERRY® uses, which, in early 2006, was a significant portion of the business world."   (Id.)

In response, Plaintiffs argue that the Court's prior Order, issued after NTP and denying summary judgment, demonstrates that their claim was not unjustifiably brought because the Court allowed Plaintiffs' claims to proceed. (Resp. at 26.)   Plaintiffs cite the following from the Court's March 3, 2007 Order:

> As Plaintiffs point out, however, they have not had an opportunity to conduct discovery to prove such a claim of induced infringement (i.e., to form the patent infringement claim) or to prove that Defendants have exceeded the scope of the Agreement through such inducement in the "sale," "making" or "importation" of the Method Patent (i.e., the breach of contract claim).   Thus, not only does a genuine issue of material fact exist concerning those claims, but, without discovery, this Court is not in a position to grant summary judgment at this time.

(Id. (citing Dkt. # 143 at 16).)

However, the Court denied summary judgment based solely on

Defendants' affirmative defense that the patent license was a complete defense to Plaintiffs' patent infringement claim.[5]   In other words, the Court ultimately denied the first motion for summary judgment on Defendants' <u>affirmative defense of license</u> as an absolute defense to Plaintiffs' patent infringement claim and concluded that more discovery was necessary before granting summary judgment.[6] (Dkt. # 143 at 1.)   Therefore, Plaintiffs' argument that the Court's previous order

---

[5]  However, in their Reply, Defendants also raised the argument that the patent infringement claim failed because some steps of the Method Patent were conducted outside of the United States:

> Although not deciding the "broad issue" of whether infringement of a method patent is limited to "use" of the method, the Court held that where part of the method is performed outside the United States, the patent is not infringed.

> Here, it is undisputed that CWC's networks are located outside the United States.   Therefore, Plaintiffs cannot possibly succeed on their patent infringement claim.

(Dkt. # 129 at 7–8 (citations omitted).)

[6]  Specifically, the Court stated:

> Plaintiffs respond that, before ruling on the Motion, they should be given the opportunity to conduct additional discovery to oppose it. Notwithstanding, if this Court decides to rule on it without additional discovery, Plaintiffs argue that the Agreement is limited in scope, and, thus, the affirmative defense of license is not a complete bar to claims under the Agreement.

(Dkt. # 143 at 7.)

14

somehow suggested that their claim had merit is unpersuasive.   Moreover, six years later, Defendants filed a second Motion for Summary Judgment, asserting that because all steps of the Method Patent were not performed in the United States, Defendants were not liable for breach of contract.   (Dkt. # 312 at 11–13.) This Court agreed with Defendants' reasoning and granted Defendants' Motion in its entirety, thereby dismissing all of Plaintiffs' claims.   (Dkt. # 333 at 31.)

Accordingly, the Court finds Defendants' arguments supportive of a finding of exceptionality.   As this case relates to a patent, <u>NTP</u>, a decision from the Federal Circuit, was governing law in this case.   <u>See</u> 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction … in any civil action arising under … any Act of Congress relating to patents ….").   In considering the "substantive strength of a party's litigating position (considering both the governing law and the facts of the case)," <u>Octane</u>, 134 S. Ct. at 1756, it is clear that Plaintiffs never contested the fact that the live casino was operated outside of the United States in Costa Rica, and, pursuant to <u>NTP</u>, Plaintiffs should have known that no cause of action for patent infringement could lie.

B.   <u>Prosecution History Disclaimer</u>

Turning to Defendants' next argument for a finding of exceptionality, Defendants argue that this Court's grant of summary judgment on the ground of

15

prosecution history disclaimer is compelling reason for exceptional treatment. (Mot. at 10.)   Defendants argue that, as found by the Court, Plaintiffs' claims were barred by prosecution history disclaimer—that is, Plaintiffs' amended complaint asserted patent coverage that Plaintiffs knew they had surrendered in previous proceedings with the Patent and Trademark Office.   (Id.)   Thus, Defendants argue, Plaintiffs purposefully brought a suit for patent infringement of a patent that they did not own and therefore brought a suit they knew lacked merit. (Id.)

Indeed, this Court concluded that Plaintiffs' patent infringement claim failed on the second ground of "prosecution history disclaimer."   (Dkt. # 312 at 23.)   The doctrine of prosecution history disclaimer affects claim construction and applies where an applicant's actions during prosecution prospectively narrow the literal scope of an otherwise more expansive claim limitation.   Pall Corp. v. Hemasure, Inc., 181 F.3d 1305, 1311 (Fed. Cir. 1999).   When a patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered.   Biogen Idec, Inc. v. GlaxoSmithKline LLC, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

In the Order granting summary judgment, this Court relied upon publically available records which had shown that all of the claims of the Method

16

Patent, as originally filed by Plaintiff Molnick, had been rejected by the United

States Patent and Trademark Office ("PTO") in an Office Action dated January 10,

1997.   (Dkt. # 312 (citing Dkt. # 333 at 22; Dkt. # 24 at 117).)   The PTO

rejected Molnick's claims under 35 U.S.C. § 102(b) because they were anticipated

by a prior patented issued to "Hedges et al." in 1982 as Patent No. 4,339,798 (the

"Hedges Patent").   (Id.; see also Dkt. # 312-3.)   However, the Hedges Patent did

not appear to provide for the possibility of interactive casino games.   Instead, the

Hedges Patent only appeared to cover non-interactive casino games such as sports

betting, bingo, keno, and lottery.   Therefore, rather than oppose the examiner's

finding that the Hedges Patent anticipated his invention, Molnick decided to limit

his claims by way of amendment, omitting the non-interactive casino games.

(Dkt. # 24 at 117.)   With the amendment, Plaintiffs' Method Patent was issued by

the PTO.   (See Dkt. # 312-2.)

              Therefore, Molnick purposefully limited his claims to only interactive

casino games, giving up his rights to the non-interactive games that were already

covered by the Hedges Patent.   This Court, in noting the amendment history

resulting in the foregoing of Molnick's claim for non-interactive games noted:

"It follows that Defendants could not infringe the Method Patent by operating a

website and licensing software that permitted sports betting, lottery, keno, and

bingo games because these activities are excluded from the Method Patent."

(Dkt. # 333 at 23.)

Plaintiffs now argue that they could have no way anticipated that the Court would grant summary judgment on the basis of "prosecution history disclaimer" and "Defendants' application for attorneys' fees appears to demand a considerable amount of clairvoyance on the part of Plaintiffs."   (Dkt. # 361 at 8.) Specifically, Plaintiffs argue that "neither prosecution history estoppel nor prosecution history disclaimer were plead as an affirmative defense by the Defendants . . . [n]or was prosecution history disclaimer raised as grounds for defendant's summary judgment motion."   (Id.)   "Nevertheless," claim Plaintiffs, "the suggestion is that Plaintiffs should have known that this Court would grant summary judgment based upon an affirmative defense that was never plead [sic]."   (Id.)

However, a cursory reading of the pleadings and motions reveal that Plaintiffs' arguments are both misleading and incorrect.   Although Defendants' summary judgment motion referred to "prosecution history disclaimer" as "file wrapper estoppel" (Dkt. # 312 at 20), it was clear that what they were actually arguing was the doctrine of "prosecution history disclaimer."   Indeed, in the Order granting summary judgment this Court noted: "[D]efendants argue that Plaintiffs' method claims exclude non-interactive games based on the amendment history of the Method Patent.   Accordingly, Defendants are, in effect, invoking

18

the doctrine of prosecution history disclaimer."   (Dkt. # 333 at 21.)   While it may be true that Defendants did not use the actual words "prosecution history disclaimer," it was obvious to this Court when it granted summary judgment, and it is clear to this Court now, that the argument Defendants presented to this Court was that of prosecution history disclaimer.   Thus, the Court declines to accept Plaintiffs' argument, which essentially relies upon a technicality.

     C.     <u>Patent Misuse</u>

     Additionally, Defendants argue that the Court's finding of patent misuse is relevant to exceptional case treatment under § 285.   (Mot. at 14.)

     In its Order granting summary judgment, the Court concluded that Plaintiffs engaged in patent misuse.   (Dkt. # 333 at 26 ("Moreover, even assuming the HGN Contract prohibits the use of the Method Patent with respect to 'bingo, keno, lottery and sporting events,' Plaintiffs' breach of contract claim fails under the doctrine of patent misuse.").)   As noted in the Order, patent misuse occurs when a patentee tires to "impermissibly broaden[] the 'physical or temporal scope' of the patent grant with anticompetitive effect."   <u>Va. Panel Corp. v. MAC Panel Co.</u>, 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting <u>Windsurfing Int'l, Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1001 (Fed Cir. 1986)).   The doctrine of patent misuse is "an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused."   <u>B.</u>

19

Braun Med., Inc. v. Abbott Labs, 124 F.3d 1419, 1427 (Fed. Cir. 1997).

Specifically, the Court concluded that:

> Here, in order to obtain a patent, Molnick struck a bargain with the
> PTO to limit his method claims to interactive games.    No sooner had
> Molnick obtained his patent, however, than he sought to "broaden[]
> the physical or temporal scope of the patent" by negotiating a license
> agreement with CWC excluding the "patented" method for sports
> betting, lottery, keno, and bingo—despite the fact that this was subject
> matter he had specifically and knowingly given up in the course of
> patent prosecution.
> . . .
> In other words, Plaintiffs purposefully attempted to exclude subject
> matter that was beyond the scope of the Method Patent from the
> license granted to CWC, so that they could license that subject matter
> to others for money.

(Dkt. # 333 at 28.)    The Court noted that Plaintiffs' conduct improperly sought to

exclude CWC from a market that it had every right to enter.

The Court's finding of patent misuse is highly probative of Plaintiffs'

bad faith in bringing the patent infringement claim to begin with—Plaintiffs first

tried to limit Defendants' usage of something that was never owned by them, and

then attempted to sue for infringement of steps of the patent that they voluntarily

relinquished years earlier.

Plaintiffs' generally respond to all of Defendants' arguments by

arguing that Defendants' conduct in the discovery disputes that plagued this case

should defeat a finding that they are entitled to attorneys' fees.[7]   However, this

Court must consider the totality of the circumstances.   See Octane, 134 S. Ct. at

1756.   At the outset, the Court notes that the discovery disputes would never have

occurred had the Plaintiffs not brought a claim for patent infringement that asserted

infringement claims on steps of a patent that they voluntarily relinquished and,

thus, did not own.   Further, in his Report and Recommendation denying

Plaintiffs' Motion for Terminating Sanctions (which was later adopted by this

Court), Magistrate Judge Ferenbach found that after being provided with a full and

complete evidentiary record, Defendants did not fail to provide the database at

issue as ordered.[8]   (Dkt. # 311 at 20. ("The Court finds that the defendants

produced a mirror image of the database as order[ed] by the court (#276) and that

something was done to the plaintiffs' copy of the database most likely on March

22, 2012, but certainly after it was produced to plaintiffs, caused Users12.dbf to be

'offline.'").)   Moreover, it was apparent without any discovery that all steps of the

Method Patent were at no times performed in the United States and, thus,

Plaintiffs' patent infringement claim lacked merit.   In fact, the Plaintiffs

---

[7]  Plaintiffs dedicate the majority of their Response (nearly twenty pages) to
"briefly revisit[ing]" the discovery disputes and previous rulings so "the Court will
not be further blinded by Defendants' chicanery."   (Dkt. # 347 at 5–23.)

[8]  The central discovery dispute in this case revolved around whether Defendants
provided a mirror image copy of a computer database as requested by Plaintiffs.
(See Dkt. # 311.)

21

themselves alleged that steps were performed in Costa Rica.   (FAC ¶ 89.)

In conclusion, the totality of the circumstances warrants a finding of "exceptionality" in this case because: (1) Plaintiffs alleged in their amended complaint that live casinos were located outside the United States in Costa Rica despite controlling Federal Circuit law holding that an infringement of a method patent could not lie unless all steps were performed in the United States; (2) Plaintiffs attempted to sue for infringement of a patent that they did not own and in fact voluntarily relinquished years earlier; and (3) Plaintiffs engaged in patent misuse by purposefully attempting to limit Defendants' usage of subject matter that was beyond the scope of the Method Patent from the license granted to CWC, so that they could license that subject matter to others for money.   Given these facts, the Court concludes Defendants have demonstrated, by a preponderance of the evidence, that this is an exceptional case in which they are entitled to attorney fees.

II.     <u>Damages Pursuant to the Patent License Agreement</u>

In addition to seeking attorneys' fees under § 285, in their Motion for Attorneys' Fees and Costs Defendants also seek "double damages" under the licensing agreement.   (Mot. at 17.)

In their complaint, Plaintiffs alleged that Defendants breached the patent license agreement by improperly sublicensing its software without excluding bingo, keno, lottery, and sports betting.   (FAC ¶¶ 112–14.)   In

granting summary judgment, this Court concluded that despite Plaintiffs' arguments, a careful reading of the HGN Contract reveals that it does not prevent CWC from licensing the CWC Software to third parties for bingo, keno, lottery or sporting events.   (Dkt. # 333 at 25.)   Thus, the Court concluded the Defendants were not liable for breach of contract: "[I]nsofar as Plaintiffs allege that Defendants impermissibly licensed CWC Software for bingo, keno, lottery or sports betting, Defendants did so, at most, without the protection of the HGN Contract."   (Id. at 25–26.)

As a second basis for dismissing Plaintiffs' breach of contract claim, the Court noted that even assuming the HGN Contract prohibited the use of the Method Patent with respect to "bingo, keno, lottery and sporting events," Plaintiffs' claim failed under the doctrine of patent misuse.   (Id.)   As discussed above,[9] the Court concluded that Plaintiffs engaged in patent misuse by purposefully attempting to exclude subject matter that was beyond the scope of the Method Patent from the license granted to CWC, so that they could license that subject matter to others for money.   (Id. at 28.)   Thus, the Court dismissed Plaintiffs' breach of contract claim.

---

9 The "patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused."   B. Braun Med., 124 F.3d at 1427.

In support of the instant Motion, Defendants now argue that they, as the prevailing party, are entitled to their attorneys' fees, costs and double damages under the license agreement.   (Mot at 17.)   The patent licensing agreement between the parties provides for the prevailing party in a breach of contract dispute to recover its attorneys' fees, costs and double damages:

> 6.8    If either party employs attorneys to enforce or defend any rights, duties or obligations arising out of or relating to this Agreement, and such party prevails in such legal action, then such prevailing party shall recover its reasonable attorney's fees, court costs and double damages.

(Dkt. # 111 at 3.)   Because Defendants were the prevailing party in this action after the Court granted summary judgment on each of Plaintiffs' claims, Defendants assert they are entitled to an award of reasonable attorneys' fees, court costs and double damages incurred in defending the action.   (Mot. at 18.)

Plaintiffs do not dispute the provision, but argue that Defendants "have not plead [sic] with any particularity nor otherwise established as a matter of law any damages arising from Plaintiffs' breach of contract claim."   (Resp. at 24.) Plaintiffs also assert that in neither their first Motion for Summary Judgment, nor in their second Motion did Defendants "raise their claimed entitlement to attorneys' fees, costs or damages under Section 6.8 of the Patent License Agreement."   (Id. at 29.)   Plaintiffs' assertions, however, are incorrect.

24

In Defendants' February 27, 2013 Motion for Summary Judgment, which was granted by the Court, Defendants argued that they are entitled to fees upon dismissal of Plaintiffs' breach of contract claim:

> Here, plaintiffs have sued for breach of contract.    The claim is without merit, however, and should be dismissed.    Upon dismissal of plaintiffs' breach of contract claim, the fee-shifting provision of the HGN Contract should most definitely apply.

(Dkt. # 312 at 17 n.14.)    Defendants then quoted paragraph 6.8 of the licensing agreement in their Motion.    Additionally, in their Answer to the Plaintiffs' Amended Complaint, Defendants asserted: "Wherefore, these answering Defendants pray that Plaintiffs take nothing by their First Amended Complaint, and be ordered to pay Defendants' costs and attorney's fees of defending this action."    (Dkt. # 105 at 9.)

The licensing agreement under which Defendants seek attorneys' fees, court costs and double damages is governed by Nevada Law.    (Dkt. # 111-3 at 6.3 ("This Agreement and its performance shall be governed by, subject to, and construed in accordance with the laws of the state of Nevada.").).    Under Nevada law, "[p]arties are free to provide for attorney fees by express contractual provisions."    Davis v. Beling, 278 P.3d 501, 515 (Nev. 2012).    "The objective in interpreting an attorney fees provision, as with all contracts, 'is to discern the intent of contracting parties.'"    Id. (quoting Cline v. Rocky Mountain, Inc., 98 P.2d 946,

949 (Wyo. 2000)).    If the language of the contract is clear and unambiguous, the

contract will be enforced as written.    <u>Id.</u>    However, the court may not "construe

[an attorneys' fees contract] provision to have broader application."    <u>Campbell v.</u>

<u>Nocilla</u>, 692 P.2d 491 (Nev. 1985).

      In <u>Closson v. Bank of America, N.A.</u>, the court applied Nevada state

law and denied the defendant's motion for attorneys' fees because the provision

did not expressly provide for attorneys' fees when <u>defending</u> a suit.    No.

2:11-CV-275JCM, 2013 WL 3285285, at *3 (D. Nev. June 27, 2013).    There, the

plaintiffs argued that the contract provisions limited attorneys' fees to only

enforcement actions and, therefore, although defendants "prevailed" on their

defenses, the provision barred their entitlement to attorneys' fees under the

contract.    <u>Id.</u> at *2.    The court agreed, stating "[t]he contract does not explicitly

state that attorney's fees may be recovered when defending an action brought

under the same contract for breach of contract and breach of the implied covenant

of good faith and fair dealing."    <u>Id.</u>

      Here, in contrast, the contract provision applies to "either party [who]

employs attorneys to <u>enforce</u> or <u>defend</u> any rights, duties or obligations arising out

of or relating to this Agreement."    (Dkt. # 111-3 at 6.8 (emphases added).)    The

relevant language of the licensing agreement clearly and unambiguously provides

for "attorney's fees, costs, and double damages" to the "prevailing party."

26

Defendants are clearly the prevailing party, as they successfully defended against each of Plaintiffs' claims.   Therefore, pursuant to the licensing agreement between the parties, Defendants are entitled to recover "reasonable attorney's fees, court costs and double damages."   (See Dkt. # 111-3 at 6.8.)

III.   Reasonableness of Attorneys' Fees and Damages

Because the Court has concluded that Defendants are entitled to attorneys' fees pursuant to 35 U.S.C. § 285 and to attorneys' fees, costs, and double damages pursuant to the licensing agreement, the Court must determine whether the requested fees are reasonable.

Defendants first assert that they are entitled to $589,135.50 in attorneys' fees under the "lodestar" calculation.   (Mot. at 1.)   Defendants further argue that they are entitled to an increase in the lodestar amount, or an "enhancement" of nearly $400,000 more than their claimed lodestar amount.   (Id. at 27.)   Specifically, they argue that the Court should raise the rate of Defendants' counsel Phillip Kantor (patent counsel) to the level of Plaintiffs' patent counsel Sid Leach at $595 per hour; additionally, they assert that the remaining local litigation counsel should have a fee raise to equal opposing counsel Craig Marquiz (local litigation counsel) at $400 per hour.   (Id. at 26.)   They contend that "[t]his is reasonable enhancement given plaintiffs' conduct in this action – i.e., pursuing an action for patent infringement in using bingo, keno, lottery when patent rights to

27

those games were surrendered years before the lawsuit even began, not to mention the case was frivolous as a matter of law given that defendants' operations were known from the beginning to be extraterritorial." (Id.) Thus, Defendants assert that they are entitled to a total of $932,299.50 in reasonable attorneys' fees under the "enhanced lodestar" calculation.

Defendants also assert that because damages are unqualified by the licensing agreement, they should include "any damages occasioned by Plaintiffs' commencement and prosecution of this action." (Mot. at 20.) Defendants state that they do not seek damages for harm to their business or reputation in order to avoid further hearings and having to obtain experts to testify to reputation and business damages; rather, Defendants "seek only their direct damages for outlays necessarily incurred to defend the action, such as experts, technicians, consultants, and resources of time and salaries of employees utilized to produce evidence, respond to discovery, support counsel and the like." (Id. at 20–21.) Defendants argue that they are entitled to damages in the amount of $428,117.13, which totals $856,234.26 after "doubling" pursuant to the licensing agreement.

As noted at the hearing, and as conceded by Plaintiffs, Plaintiffs have not specifically objected to any of Defendants' calculations regarding either the amount of attorneys' fees awarded under § 285 or the amount of damages under the contract; rather, Plaintiffs remained steadfast in their opposition to Defendants

28

receiving <u>any</u> fees whatsoever.    Therefore, in light of the Court's conclusion that Defendants are entitled to attorneys' fees and damages, the Court hereby **ORDERS** the parties to submit briefing on the issue of the reasonableness of attorneys' fees and the amount of damages.

CONCLUSION

Based on the totality of the circumstances, the Court concludes that this is an "exceptional case" under § 285 and Defendants are entitled to recover their reasonable attorneys' fees.    Additionally, as the prevailing party, the Court concludes that Defendants are entitled to damages pursuant to the licensing agreement.    The Court hereby reserves ruling on the amount of those fees and damages pending additional briefing by the parties.

Plaintiffs shall file their supplemental brief, specifically responding to Defendants' calculations as set forth in their Motion **on or before June 22, 2014**. Defendants shall file any reply to Plaintiffs' objections **on or before July 9, 2014**.

IT IS SO ORDERED.

Dated: Las Vegas, Nevada, May 21, 2014.

_____

David Alan Ezra
Senior United States Distict Judge