IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

HOME GAMBLING NETWORK, INC., )   No. 2:05-CV-610-DAE
et al.,                      )
                             )
                Plaintiffs,  )
                             )
vs.                          )
                             )
CHRIS PICHE, et al.,         )
                             )
                Defendants.  )

ORDER (1) AWARDING DEFENDANTS ATTORNEYS' FEES, COSTS, AND
DAMAGES AND (2) DENYING DEFENDANTS' MOTION FOR FEES AND
COSTS AGAINST COUNSEL

On May 22, 2014, the Court entered an Order Granting Defendants'

Motion for Attorney Fees and Costs.  (Dkt. # 367.)  In that Order, the Court

reserved ruling on the amount of those fees and costs pending additional briefing

by the parties.  Following the submission of additional briefing, the Court heard

oral argument on the amount and reasonableness of the fees and costs on March 12,

2015.  On the same date, the Court heard oral argument on Defendants' Motion for

Attorney Fees and Costs Against Counsel Pursuant to 28 U.S.C. § 1927 and the

Court's Inherent Powers.  (Dkt. # 391.)  After reviewing the briefing and

considering the arguments at the hearing, the Court awards Defendants

$571,001.70 in attorneys' fees, $17,882.83 in costs, and $772,534.26 in damages, for a total award of $1,361,418.79 against Plaintiffs.  Additionally, the Court **DENIES** Defendants' Motion for Attorney Fees and Costs Against Counsel (Dkt. # 391).

BACKGROUND

I.  <u>Factual Background</u>

On September 1, 1998, the United States Patent and Trademark Office issued Patent No. 5,800,268, titled "Method of Participating in a Live Casino Game from a Remote Location" (the "Method Patent"), to inventor Mel Molnick. (Dkt. # 98 ("FAC") ¶ 12.)  Molnick subsequently assigned all rights in the Method Patent to Plaintiff Home Gambling Network ("HGN").  (<u>Id.</u>)  In 2003, Molnick, the President of HGN, contacted Defendant Casinowebcam.com ("CWC") about licensing the Method Patent.  (<u>Id.</u> ¶ 4.)  On November 25, 2003, CWC entered into five license agreements with Plaintiffs, which were superseded by a patent license agreement (the "HGN Contract") on August 10, 2004.  (<u>Id.</u> ¶¶ 24, 27.)

The HGN Contract granted Defendants a license to use the Method Patent and, in turn, to grant sublicenses to other companies.  (<u>Id.</u> ¶¶ 29–34.)  More specifically, the HGN Contract gave CWC "a perpetual, exclusive, royalty-free worldwide license to use the Licensed Technology" and the right "to grant sublicenses therein to CWC Resellers, CWC Licensees, and End Users."  (Dkt.

2

# 111-3 ("HGN Contract") § 2.1.)  The HGN Contract also expressly provided that "[n]o further approval or documentation" was "required" from Plaintiffs with respect to the granting of sublicenses.  (Id.)  The HGN Contract further defined "CWC Software" as "any software owned or licensed by CWC, which CWC makes generally available to its customers, and which enables CWC and CWC Licensees to provide any games over computer networks to end users, excluding Bingo, Keno, Lottery and all sporting events."  (Id. § 1.4 (emphasis added).)

Pursuant to the HGN Contract, CWC used the Method Patent in conjunction with online gambling operations.  (Dkt. # 312-5 ("Piche Decl.") ¶ 3.)  CWC ran a "live webcam casino" (the "Live Casino"), which functioned like any other casino except that it was outfitted with digital cameras to allow physically remote customers to view and interact with the casino, which was located in Costa Rica, through the internet.  (Id.)  Players could access the Live Casino through the website www.casinowebcam.com.  (Id.)  CWC also ran a related business that offered licenses to third-party online gaming websites, allowing them to use CWC software to offer live webcam casino gaming without needing to operate their own "live" casinos.  (Id.)  At all relevant times, CWC's computer servers, which hosted the online games, and the employees of the Live Casino were located in Costa Rica.  (Id.; see also FAC ¶¶ 5, 7 (admitting that Defendants are all foreign individuals or entities and that CWC was a Costa Rican business with its principal

3

place of business in Costa Rica); Dkt. # 274 ("Beall Decl."), Ex. 1 ¶ 1 (claiming servers recorded time in their local Costa Rica time).)

II.   <u>Procedural Background</u>

On July 10, 2006, Plaintiffs filed a First Amended Complaint, alleging, among other things, that CWC infringed their Method Patent through CWC's operation of an online gambling website and its production and distribution of online gambling software, all of which permitted sports betting and lottery, keno, and bingo games.  (FAC ¶¶ 88–89.)  While recognizing that Defendants had the right to grant sublicenses under the HGN Contract, Plaintiffs asserted that CWC improperly sublicensed its software without excluding bingo, keno, lottery, and sports betting.  (<u>Id.</u> ¶¶ 112–14.)

On August 10, 2006, Defendants filed a Motion for Summary Judgment on all counts of the First Amended Complaint.  (Dkt. # 111.)  On March 30, 2007, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment.  (Dkt. # 143.)  The Court granted summary judgment as to Count Two (Declaratory Judgment) and Count Seven (Conversion) of the First Amended Complaint.  (<u>Id.</u>)  The Court denied summary judgment as to Count One (Patent Infringement), Count Three (Preliminary and Permanent Injunction), Count Four (Accounting), Count Five (Breach of Contract), and Count Six (Intentional Interference with Contractual Relationships).  (<u>Id.</u>)

4

Approximately six years later, on February 27, 2013, Defendants filed a second Motion for Summary Judgment, contending that "the record is ripe for summary judgment on the remaining counts of the complaint." (Dkt. # 312 at 2.) On September 30, 2013, this Court granted Defendants' Motion for Summary Judgment in its entirety and dismissed all of Plaintiffs' claims. (Dkt. # 333.) In relevant part, the Court concluded that (1) there was no liability under 35 U.S.C. § 271(a) because at least one of the method steps was performed outside of the United States (id. at 16); (2) there was no inducement to infringe the patent because there was no direct infringement of the patent (id.); (3) Defendants did not infringe the Method Patent by operating a website and licensing software that permitted sports betting, lottery, keno, and bingo games because these activities were excluded from the Method Patent pursuant to the prosecution history disclaimer (id. at 23); and (4) Defendants had no contractual liability because the HGN Contract did not prevent CWC from licensing the CWC Software to third parties for bingo, keno, lottery, or sporting events (id. at 25). Importantly, the Court found that Plaintiffs purposefully attempted to exclude subject matter that was beyond the scope of the Method Patent from the license granted to CWC so that they could license that subject matter to others for money. (Id. at 26.) Plaintiffs appealed the Court's summary judgment order, (Dkt. # 342), and on

5

June 9, 2014, the Federal Circuit affirmed this Court without opinion pursuant to Federal Circuit Rule 36.  (Dkt. # 396.)

On October 24, 2013, Defendants filed a Motion for Attorney Fees and Costs (Dkt. # 337), arguing that they were entitled to a total award of $1,806,416.59.  (Id. at 1.)  On May 22, 2014, the Court issued an Order Granting Defendants' Motion for Attorney Fees and Costs, finding that based on the totality of the circumstances, this is an "exceptional case" under 35 U.S.C. § 285.  (Dkt. # 367.)  The Court so found because (1) Plaintiffs alleged in their amended complaint that live casinos were located outside the United States in Costa Rica despite controlling Federal Circuit law holding that a claim for infringement of a method patent could not lie unless all steps were performed in the United States; (2) Plaintiffs attempted to sue for infringement of a patent they did not own and in fact voluntarily relinquished years earlier; and (3) Plaintiffs engaged in patent misuse by purposefully attempting to limit Defendants' usage of subject matter that was beyond the scope of the Method Patent from the license granted to CWC so that they could license that subject matter to others for money.  (Id. at 22.) Additionally, the Court concluded that Defendants, as the prevailing party, are

entitled to recover "reasonable attorney's fees, court costs, and double damages" pursuant to the licensing agreement between the parties.[1]  (Id. at 29.)

Because Plaintiffs did not specifically object to any of Defendants' calculations regarding either the amount of attorneys' fees awarded under § 285 or the amount of damages awardable under the contract, instead remaining steadfast in their opposition to Defendants receiving any fees whatsoever, the Court ordered the parties to submit briefing on the issue of the reasonableness of attorneys' fees and the amount of damages.  (Id.)

On June 20, 2014, Defendants filed a Supplement to their Motion for Attorney Fees and Costs requesting additional attorneys' fees incurred since their original Motion was submitted.  (Dkt. # 372.)  On July 8, 2014, Plaintiffs filed a Supplemental Brief addressing Defendants' award calculations.  (Dkt. # 374.)  On July 22, 2014, Defendants filed a Response to Plaintiff's Supplemental Brief.  (Dkt. # 383.)  The Court considers these supplemental filings along with Defendants' original Motion for Attorney Fees and Costs in determining the amount of fees, costs, and damages to which Defendants are entitled.

---

[1] On July 9, 2014, Plaintiffs filed a "Supplemental Brief Requesting Reconsideration of the Court's Finding of an 'Exceptional' Case."  (Dkt. # 375.) The Court construed this filing as a motion for reconsideration, and gave Defendants the opportunity to file a response.  (Dkt. # 382.)  On November 11, 2014, the Court denied Plaintiffs' Motion for Reconsideration.  (Dkt. # 389.)

7

On January 19, 2015, Defendants filed the instant Motion for Attorney Fees and Costs Against Counsel Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers.  (Dkt. # 391.)  On February 24, 2015, Plaintiffs' counsel Snell & Wilmer filed an Opposition to Defendants' Motion.  (Dkt. # 397.)  On the same day, Plaintiffs' counsel Craig Marquiz also filed an Opposition.  (Dkt. # 398.) On March 6, 2015, Defendants filed a Reply to both Oppositions.  (Dkt. # 403.)

<u>ANALYSIS</u>

Together, Defendants' Motion for Attorney Fees and Costs (Dkt. # 337), Defendants' Motion for Attorney Fees and Costs Against Counsel (Dkt. # 391) and the supporting and opposing memoranda submitted by both parties raise the following issues for the Court to adjudicate: (1) whether any fees awarded pursuant to the licensing agreement must be segregated from fees awarded pursuant to § 285; (2) the amount of reasonable attorneys' fees to be awarded; (3) the amount of costs to be awarded; (4) whether Defendants are entitled to recover the type of damages they request under the licensing agreement and in what amount; and (5) whether Defendants are entitled to collect fees, costs, and expenses from Plaintiffs' counsel under 28 U.S.C. § 1927 and the Court's inherent powers.

8

I.    <u>Segregation of Fee Awards</u>

In its Order Granting Defendants' Motion for Award of Attorney Fees and Costs, the Court found that Defendants were entitled to an award of reasonable attorneys' fees under § 285.  (Dkt. # 367 at 22.)  The Court also held that Defendants were entitled to recover "reasonable attorney's fees, court costs and double damages" pursuant to the licensing agreement between the parties.  (<u>Id.</u> at 27.)  Section 6.8 of the licensing agreement provides as follows:

> If either party employs attorneys to enforce or defend any rights, duties or obligations arising out of or relating to this Agreement, and such party prevails in such legal action, then such prevailing party shall recover its reasonable attorney's fees, court costs and double damages.

(HGN Contract § 6.8.)  Thus, Defendants are entitled to fees under this section for the defense of Plaintiffs' breach of contract claim.  Because patent law is within the Federal Circuit's exclusive jurisdiction, Federal Circuit law applies to claims for attorneys' fees under § 285.  <u>Bywaters v. United States</u>, 670 F.3d 1221, 1227–28 (Fed. Cir. 2012) (citing <u>Q-Pharma, Inc. v. Andrew Jergens Co.</u>, 360 F.3d 1295, 1299 (Fed. Cir. 2004)).  Pursuant to its terms, Nevada law applies to the licensing agreement, including the fee provision.  (HGN Contract § 6.3.)

Plaintiffs argue that § 285 does not authorize fee awards for fees incurred in the litigation of non-patent issues, and that the Court must segregate fees awarded under § 285 for the litigation of patent issues from fees awarded

9

under the licensing agreement.  (Dkt. # 374 at 12.)  Defendants counter that fees

may be awarded for non-patent claims under § 285 if the patent and non-patent

issues are sufficiently intertwined.  (Dkt. # 383 at 16.)

        Generally speaking, fees for non-patent issues are not allowable under

§ 285.  Rohm & Haas Co. v. Crystal Chem. Co., 736 F.2d 688, 693 (Fed. Cir.

1984).  However, the Federal Circuit has recognized that "in an action having both

patent and non-patent claims, recovery may be had under § 285 for the non-patent

claims if the issues involved therewith are intertwined with the patent issues."

Beckman Instruments, Inc. v. LKB Produckter AB, 892 F.2d 1547, 1552 n.2 (Fed.

Cir. 1989).  Similarly, under Nevada law, courts need not apportion attorneys' fees

where the claims for which fees are proper are "inextricably intertwined" with the

claims for which fees are disallowed.[2]  Mayfield v. Koroghli, 184 P.3d 362, 369

(Nev. 2008).  The Court must therefore decide whether the issues in this case are

sufficiently intertwined as to relieve any segregation requirement.

---

[2] Mayfield dealt with the issue of apportioning costs where a plaintiff pursues
claims based on the same factual circumstances against multiple defendants.  184
P.3d 362, 369 (Nev. 2008).  However, other federal courts have applied this
reasoning in cases involving multiple claims against the same defendant.  See
GCM Air Group, LLC v. Chevron U.S.A., Inc., No. 3:07–cv–00168–BES–RAM,
2009 WL 1810743, at *2 (D. Nev. June 24, 2009).  Furthermore, the California
case from which Mayfield adopted its reasoning also dealt with multiple claims
against the same defendant.  Abdallah v. United Sav. Bank, 51 Cal. Rptr. 2d 286,
293 (Cal. Ct. App. 1996).

As the Court noted in its Order Granting Defendants' Second Motion for Summary Judgment, "Plaintiffs' entire action [was] premised on the allegation that Defendants infringed the Method Patent through their operation of an online gambling website that included sports betting, lottery, keno, and bingo games and through the distribution of online gambling software that also included sports betting, lottery, keno, and bingo games." (Dkt. # 333 at 19.) Consequently, resolution of all of Plaintiffs' claims turned on the true coverage of the Method Patent and the implications of that coverage with respect to the HGN Contract. The Court found that Molnick gave up rights to non-interactive games (including lottery, keno, bingo, and sports betting) by limiting his patent prosecution claims to interactive games. (Id. at 23.) Accordingly, the Court found that Defendants could not infringe the Method Patent by operating a website and licensing software that permitted lottery, keno, bingo, and sports betting because those games were excluded from the Method Patent. (Id.) The Court dismissed Plaintiffs' claims for preliminary and permanent injunction and accounting for the same reasons. (Id. at 24.)

The Court next granted summary judgment on Plaintiffs' breach of contract and intentional interference with contractual relations claims, finding first that the HGN Contract did not prevent CWC from licensing the CWC Software to third parties for lottery, keno, bingo, and sports betting. (Id. at 25.) The Court

11

further found that even if the HGN Contract did include such limitations, it impermissibly encompassed subject matter that Plaintiffs affirmatively surrendered during the course of patent prosecution, and that Plaintiffs' breach of contract claim consequently failed as a matter of law.  (Id. at 28.)  The Court granted summary judgment on Plaintiffs' intentional interference with contractual relations claim for the same reasons.  (Id. at 29.)  Overall, resolution of the claims in this case largely turned on the same questions of fact regarding the scope of the Method Patent and, in turn, the scope of the licensing agreement.

Because the claims share an underlying factual basis and apportioning fees between the claims would be unfeasible, under both the law of the Federal Circuit and Nevada law, the Court need not segregate the fee award.  Furthermore, the amount of fees can be calculated using the same method under either § 285 or the licensing agreement.  Nevada law holds that "district courts have great discretion to award attorney fees, and this discretion is tempered only by reason and fairness." Haley v. Dist. Ct., 273 P.3d 855, 860 (Nev. 2012).  As such, courts may use "any method rationally designed to calculate a reasonable amount, so long as the requested amount is reviewed in light of the factors set forth in Brunzell v. Golden Gate National Bank." Id.  Thus, so long as the fee award under § 285 is evaluated in light of the Brunzell factors (the qualities of the attorney, the character of the work, the actual work performed, and the case's result, Brunzell, 455 P.2d

12

31, 33 (Nev. 1969)), the award will also be proper under Nevada law.  Assuming

that any method approved by the Federal Circuit to calculate reasonable fees under

§ 285 is "rationally designed to calculate a reasonable amount," the Court

concludes that the most expeditious way of calculating the fee award is to compute

reasonable fees under § 285, and review that award under the <u>Brunzell</u> factors.  By

using this method, the Court ensures that the fee award is appropriate under both

§ 285 and the licensing agreement.

II.     <u>Attorneys' Fees</u>

Defendants request $740,368.47 in attorneys' fees for all work

performed in this case, including costs incurred in making and defending their

motion for attorneys' fees.  (Dkt. # 337 at 15–16.)  Defendants arrived at this figure

using the lodestar method, whereby reasonable attorneys' fees are calculated by

multiplying the number of hours reasonably expended on the litigation by a

reasonable hourly billing rate.  (<u>Id.</u> at 24.)

Plaintiffs counter that the measure of the fee award should instead be

the amount Defendants actually paid for legal representation.  (Dkt. # 374 at 8,

citing <u>Medtronic Navigation, Inc. v. BrainLab Medizinsche Comp. Sys. GmbH</u>,

No. 98–cv–01072–RPM, 2008 WL 4452137, at *2 (D. Colo. Sept. 30, 2008)).[3]

---

[3] As Defendants noted, the Federal Circuit reversed <u>Medtronic Navigation</u>.  603
F.3d 943 (Fed. Cir. 2010).  The appellate court held that, contrary to the district

However, the Federal Circuit has made clear that in determining the appropriate

award under § 285, "courts should not be, and have not been, limited to ordinary

reimbursement of only those amounts paid by the injured party." Mathis v. Spears,

857 F.2d 749, 754 (Fed. Cir. 1988).

   The Court finds that the lodestar method should be used in calculating

the fee award in this case.  As the Federal Circuit has noted, the Supreme Court has

consistently upheld use of the lodestar method in determining the amount of

reasonable attorneys' fees under federal fee-shifting statutes such as § 285.

Bywaters, 670 F.3d at 1228–29 (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S.

542, 551 (2010)).  The Supreme Court has identified three "important virtues"

making the lodestar method particularly well-suited for application to fee-shifting

statutes.  Perdue, 559 U.S. at 551.  First, the lodestar method roughly approximates

the fee that the prevailing attorney would receive under the prevalent market rates

in the relevant community, in accordance with the aims of fee-shifting statutes.  Id.

Second, the lodestar method is "readily administrable."  Id.  Third, the lodestar

calculation is "objective" and "thus cabins the discretion of trial judges, permits

meaningful judicial review, and produces reasonably predictable results."  Id. at

552.  Significantly, the Federal Circuit has affirmed an award of attorneys' fees

---

court's finding, the case did not qualify as "exceptional" and thus no award of fees
was merited.  Id. at 965.  The appellate court thus did not reach the issue of the
appropriate measure of the fee award.

14

under § 285 where the district court employed the lodestar method.  Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008), affirming Nos. 03 CIV. 8253(DLC), 04 CIV. 1966 (DLC), 2007 WL 840368 (S.D.N.Y. Mar. 21, 2007).

     A.    Lodestar Calculation

     Under the lodestar approach, the court calculates the amount of reasonable attorneys' fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1353 (Fed. Cir. 2011) (internal quotation marks omitted).  The party seeking a fee award must submit proper evidence supporting the hours spent working on the case and the hourly rates claimed.  Wagner v. Shinseki, 733 F.3d 1343, 1349 (Fed. Cir. 2013) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

     As a preliminary matter, Plaintiffs object to Defendants' calculations on the grounds that Defendants' supplemental request for fees, in which Defendants request an additional $223,951.00 for expenses incurred in defending the Court's summary judgment order on appeal (Dkt. # 372 at 2), was not timely made.  (Dkt. # 374 at 10.)  Specifically, Plaintiffs argue that all requests for attorneys' fees must be filed within fourteen days after the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i).  (Id.)  Plaintiffs contend

that if Defendants wanted to supplement their initial request, they were required to do so by motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. (Id.)

The Court first notes that a request for attorneys' fees cannot be made under Rule 59 because "a motion for attorney fees is unlike a motion to alter or amend judgment.  It does not imply a change in the judgment, but merely seeks what is due because of the judgment.  It is, therefore, not governed by the provisions of Rule 59(e)."  White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 452–53 (1982).  Similarly, a motion for attorneys' fees does not request "relief from a final judgment, order, or proceeding" under Rule 60(b).  Fed. R. Civ. P. 60(b).  As such, Defendants were not required to make their supplemental request in a Rule 59 or Rule 60 motion—indeed, they could not have done so.  Rather, the Court finds that Defendants permissibly supplemented their initial fee motion.  See Island Green, LLC v. Querrard, No. 09–0050, 2013 WL 1324833, at *2 (D. V.I. Mar. 27, 2013) (noting that "[the] Federal Rules of Civil Procedure do not place a time limit on a party's request to supplement an existing motion").

Furthermore, the Federal Circuit has stated that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285."  Therasense, Inc. v. Becton, Dickenson & Co., 745 F.3d 513, 516 (Fed. Cir. 2014) (citing Comm'r, I.N.S. v. Jean, 496 U.S. 154,

16

161–62 (1990)).  Consequently, district courts have the power under § 285 to award fees "for the entire case, including any subsequent appeals" because of their "superior understanding of the litigation."  Id. at 571 (citing Jean, 496 U.S. at 160). The Court therefore considers Defendants' supplemental request along with the amounts requested in their original motion.

       1.    <u>Hours Reasonably Expended on Litigation</u>

       The Court first addresses the number of hours Defendants reasonably expended in defending this litigation.  Defendants state that nine attorneys spent a total of 2,439.6 hours working on this case.  (Dkt. # 337 at 25; Dkt. # 372 at 2.)  In support of their calculations, Defendants provide billing records from each of the law firms involved in defending this case.  (See Dkt. # 337, Ex. A (Hutchinson & Steffen, LLC ("Hutchinson Invoice 1")), Ex. B (Law Offices of Philip A. Kantor ("Kantor Invoice 1")), Ex. C (Lincoln, Gustafson & Cercos ("Lincoln Invoice")); Dkt. # 372, Ex. H (Hutchinson & Steffen, LLC ("Hutchinson Invoice 2")), Ex. I (Law Offices of Philip A. Kantor ("Kantor Invoice 2"))).  Defendants also provide declarations from each of the attorneys who worked on the case.[4]  (See Dkt. # 337, Ex. A-1 ("Hutchinson Decl. 1"), Ex. A-2 ("Wall Decl."), Ex. A-3 ("Reynolds Decl.

_____

[4] Nicholas Salerno made his declaration (Dkt. # 337, Ex. C-1) on behalf of himself and Thomas Ryan, his former associate at Lincoln, Gustafson & Cercos, who has retired from the practice of law and cannot be located.  (Id. ¶ 3.)  Plaintiffs do not contest that Salerno is qualified to do so.

1"), Ex. B-1 ("Kantor Decl. 1"), Ex. C-1 ("Salerno Decl."), Ex. C-2 ("Turtzo Decl."), Ex. C-3 ("Mann Decl."); Dkt. # 372, Ex. H-1 ("Hutchinson Decl. 2"), Ex. H-2 ("Reynolds Decl. 2"), Ex. H-3 ("Trout Decl."), Ex. I-1 ("Kantor Decl. 2")). Defendants submitted their billing records in their entirety, but made redactions to either subtract work or protect notations that were protected by the attorney-client privilege. (Dkt. # 337 at 25.) Plaintiffs object to Defendants' billing entries on two grounds: first, that Defendants improperly "block billed" their time, and second, that Defendants unnecessarily prolonged the litigation.

### i.      "Block Billing"

Plaintiffs first object to Defendants' proffered calculations on the grounds that Defendants "block billed" much of their time by "lumping multiple tasks together in the same entry." (Dkt. # 374 at 4.) Attorneys "block bill" their time when they record multiple tasks in large blocks of time without explaining how hours were allotted to specific tasks. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). Plaintiffs argue that the block billed entries "prevent the Court from determining how reasonable any of the individual tasks within each entry are," and that the Court should accordingly decline to award any fees in this case.[5] (Id. at 5.) Plaintiffs' briefs make no attempt to identify which entries they

---

[5] Later in their brief, Plaintiffs suggest that the total fee request should be reduced by 50% because of Defendants' block billing practices. (Dkt. # 374 at 7.)

find objectionable, although they identified seven entries to which they object at the hearing.  Furthermore, they do not provide any support for the assertion that block billing should automatically result in denial of fees altogether.  In practice, courts of appeals generally approve of a reduction in fees awarded for block-billed hours.  See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd., 726 F.3d 1359, 1369 (Fed. Cir. 2013) (approving award of 25% of requested fees from block-billed entries); Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008) (approving 15% global reduction in fee request due to block billing); cf. Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (vacating district court's 20% global reduction for block billing where only half of submitted hours were block billed).

The Supreme Court has advised that counsel "is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  Hensley, 461 U.S. at 437 n.12.  Put otherwise, counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  Id. at 437.

After a careful review of each time entry submitted by Defendants, the Court finds little support for Plaintiffs' objection.  While a small number of entries could perhaps include more detail, the Court notes that the vast majority of time entries are short and include detailed descriptions of counsels' efforts.  They

19

generally identify the specific project worked on (such as a particular motion, declaration, deposition, or piece of discovery review), the specific claim or defense being addressed (such as non-infringement defense, intentional interference claims, or alleged discovery abuses), or both.  Additionally, many of the entries representing large chunks of time were dedicated to a single task, such as drafting a motion.[6]  Finally, the Court takes special note of the entries to which Plaintiffs objected at the hearing.  Although some of those entries were billed in large chunks of time, the Court does not find that most of those entries were inappropriately block-billed.  For example, Reynolds' entry of 9.2 hours on April 29, 2009 includes, among other tasks, reviewing eighteen bankers boxes of documents in preparation for a deposition.  However, the Court agrees with Plaintiffs that Reynolds' entry of 21.1 hours on August 29, 2011, which was spent reviewing comments, revising a draft, teleconferencing, and reviewing exhibits, is not sufficiently detailed to allow the Court to meaningfully review the time expended and its reasonableness.  The Court also finds that Reynolds' entry of 15.1 hours on June 2, 2014, which was spent preparing for a hearing, analyzing a case, evaluating the history of this case and identifying topics for rebuttal is similarly insufficient to

---

[6] The Court also notes that Plaintiffs' own billing statements, submitted in conjunction with their statement of fees and costs in response to Magistrate Judge Leavitt's order awarding Plaintiffs attorneys' fees and costs in connection with a discovery dispute, are no more detailed than those submitted by Defendants.  (See Dkt. # 212, Exs. 1–2.)

allow the Court to make a meaningful review.  Plaintiffs have requested that

Defendants' award be reduced by 50% due to alleged block billing.  (Dkt. # 374 at

7.)  Therefore, the Court will reduce Reynolds' hours by 18.1 hours, or 50% of the

36.2 block-billed hours, in the lodestar calculation.

ii.   Delays Allegedly Caused By Defendants

Plaintiffs next object to Defendants' calculations on the grounds that

Defendants needlessly prolonged the litigation by not making appropriate

arguments in their first summary judgment motion and by abusing the discovery

process.  (Dkt. # 374 at 5, 6.)  In calculating the number of hours to be used in the

lodestar calculation, the court should exclude hours that were not "reasonably

expended" on the litigation, including hours that were "excessive, redundant, or

otherwise unnecessary."  Wagner, 733 F.3d at 1349 (citing Hensley, 461 U.S. at

434).

Plaintiffs first argue that the facts upon which the Court's decision

ultimately turned—the scope of the Method Patent and the publicly available

information concerning the prosecution history disclaimer—were available long

before this litigation commenced.  (Dkt. # 374 at 5.)  According to Plaintiffs, "[if]

Defendants truly had these overwhelming facts on their side from the outset of

litigation, there is no reasonable explanation why it took them more than six years

and a prior failed motion for summary judgment to properly adjudicate the claims

21

in this action." (Id.) In other words, Plaintiffs argue that Defendants should have been able to present those arguments which were eventually successful on summary judgment long ago, thus saving several years' worth of litigation costs.

It is true that at the time Plaintiffs filed their Amended Complaint on July 10, 2006, the law was clear that conduct occurring outside of the United States could not constitute infringement of a method covered by a United States patent. NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed. Cir. 2005). Defendants brought their first summary judgment motion on the grounds that their affirmative defense of license was a complete defense to Plaintiffs' patent infringement claim, although they also argued for the first time in their reply brief that Plaintiffs could not succeed on their infringement claim because CWC's networks were located outside of the United States.[7] (Dkt. # 129 at 7–8). However, the Court will not penalize Defendants for pursuing one defense theory over another in their first motion for summary judgment.

This is especially so because Plaintiffs did not focus on their theory of induced infringement under 35 U.S.C. § 271(b) until 2007, after Defendants filed their first summary judgment motion. (See id. at 11–12 ("Significantly, during the hearing on the Motion, Plaintiffs re-focused their infringement argument from one

---

[7] Arguments raised for the first time in a reply brief are improper, and district courts need not consider them. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

that predominantly was made under 35 U.S.C. § 271(f) and (g), as plead in the First

Amended Complaint, to one made pursuant to 35 U.S.C. § 271(b).").)  As the

Court noted in its first summary judgment Order, "seeing as Plaintiffs did not focus

on inducement under § 271(b) until the hearing, this Court understands the

confusion surrounding the legal issues to be determined."  (Dkt. # 143 at 12 n.2.)

Defending a claim for infringement under one subsection involves different

arguments than defending a claim made under other subsections.  In its Order

granting Defendants' second summary judgment motion, the Court stated that

§ 271(g) was inapplicable in this case because CWC's live webcam casino services

involved the transmission of information rather than the manufacture of a physical

product.  (Dkt. # 333 at 15, citing NTP, 418 F.3d at 1323–24.)  The Court also

stated that § 271(f) does not apply to method patents as a matter of law.  (Id. at 16,

citing Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 576 F.3d 1348, 1364 (Fed.

Cir. 2009).)  Thus, the fact that Defendants did not focus on the NTP argument,

which applies to direct and induced infringement claims under § 271(a) and 271(b),

until after their first summary judgment motion cannot be held against them.  After

the first summary judgment motion, a series of lengthy discovery disputes

precipitated by Plaintiffs' requests for additional discovery prevented Defendants

from filing their second motion for summary judgment, in which they again raised

the NTP argument, until 2013.

Plaintiffs also argue that Defendants' fees should be reduced because of those discovery disputes.  (Dkt. # 374 at 5.)  Because the parties are familiar with the history of the disputes, the Court will not reproduce that history in its entirety here.[8]  The Court acknowledges that Defendants were responsible for a portion of those delays—indeed, Magistrate Judge Leavitt levied sanctions against them in 2009 for failing to comply with a discovery order regarding the production of documents.  (Dkt. # 212.)  The Court finds that Defendants should not receive fees for the expenses incurred in the course of that dispute, as those hours were not reasonably expended on the litigation.  Judge Leavitt ordered Defendants to pay reasonable expenses incurred by Plaintiffs in filing Dkts. ## 147, 150, 156, 157, 160, 173, 178, 188, 194, 195, and 196; conducting the discovery compliance deposition of Chris Piche on November 3, 2008; and preparing for and participating in the September 22, 2008 and March 2, 2009 discovery hearings. (Dkt. # 210 at 10.)  The Court therefore reduces Defendants' award by the amount they incurred in responding to those filings, deposition, and hearings.  After careful review of the billing statements submitted by Defendants, the Court finds that 18.5 hours should be subtracted from Nicholas Salerno's time, 93.4 hours should be

---

[8] The Court provided a detailed account of the disputes in its Order Adopting the Magistrate Judge's Report and Recommendation regarding the dispute.  (Dkt. # 332 at 2–11.)

subtracted from Christopher Turtzo's time, and 0.4 hours should be subtracted from Jessica Mann's time.[9]

However, the Court ultimately found that Defendants were not responsible for additional delays caused by issues with the database they produced. (Dkt. # 311, adopted by Dkt. # 332.)  The Court found that Defendants produced a mirror image of the database as ordered, and that something done to Plaintiffs' copy after it was produced caused it to be "offline" and partially inaccessible.  (Id. at 25.)  Defendants' award will not be reduced for time expended on that dispute. Because the delay created by the database dispute prevented Defendants from filing their second summary judgment motion, the Court finds that the above reductions adequately reduce Defendants' award for their role in the delays.[10]

---

[9] The Court emphasizes that the fee award in this case does not improperly compensate Defendants for time and resources expended in relation to the filings, deposition, and hearings for which Judge Leavitt ordered sanctions.  Hutchinson & Steffen, LLC and Philip A. Kantor entered their notice of appearance in this case on April 6, 2009.  (Dkt. # 205.)  In the instant motion, those attorneys request fees from the time period between April 1, 2009, and May 30, 2014.  The date of the last filing for which sanctions were ordered was March 2, 2009; the deposition took place on November 3, 2008; and the hearings were held on September 22, 2008 and March 2, 2009, respectively.  They do not request fees that previous counsel incurred in responding to those filings or attending the deposition and hearings.  Here, the award is properly reduced by the amount that Lincoln, Gustafson & Cercos, who have been involved in this case since 2005, expended on the relevant filings, deposition, and hearings.

[10] The Court also notes that Judge Leavitt's sanctions were not premised on the problematic database, but on Defendants' failure to produce numerous other

2.   <u>Reasonable Hourly Rate</u>

The Court next turns to the reasonableness of the hourly rates charged by Defendants' counsel.  Defendants advance the following blended rates: $268.19 for Mark Hutchinson, $360.00 for Michael Wall, $95.00 for Brandon J. Trout, $275.62 for Jacob Reynolds, $361.71 for Philip Kantor, and $200.00 for Nicholas Salerno, Thomas Ryan, Jessica Mann, and Christopher Turtzo.  (Dkt. # 337 at 25; Dkt. # 372 at 2.)  A reasonable hourly rate is "the prevailing market rate," which the Supreme Court defines as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1348 (Fed. Cir. 2008) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).  The Federal Circuit has determined that forum rates (i.e., prevailing rates in the forum court's market) should be used to calculate awards under fee-shifting statutes.  <u>See id.</u> at 1348–49. The Court therefore looks to Nevada market rates for guidance.  For simplicity's sake, the Court provides the following chart showing the rate charged by each attorney along with relevant information about his or her experience:

---

documents.  All of the filings for which Judge Leavitt ordered sanctions concerned Defendants' lack of responsiveness to requests for documents.  (<u>See</u> Dkt. # 210.) Importantly, Judge Leavitt entered his sanctions order on July 20, 2009, and Plaintiffs first complained of their inability to access the database on July 28, 2010. (Dkt. # 240.)  Thus, the sanctions imposed by Judge Leavitt do not improperly punish Defendants for conduct for which they were later exonerated, as the sanctions were <u>not</u> premised on the alleged corruption of the database.

26

| Attorney | Blended Rate | Experience |
|----------|--------------|------------|
| Mark A. Hutchinson | $268.19 | 20+ years, specializing in litigation |
| Michael K. Wall | $360.00 | 28 years |
| Brandon J. Trout | $95.00 | Newly licensed attorney |
| Jacob A. Reynolds | $275.62 | 7 years, specializing in federal practice |
| Philip A. Kantor | $361.71 | 30+ years, specializing in complex patent and IP litigation |
| Nicholas Salerno | $200.00 | 19+ years |
| Thomas Ryan | $200.00 | 2 years |
| Jessica Mann | $200.00 | 10+ years |
| Christopher A. Turtzo | $200.00 | 7+ years |

As Plaintiffs themselves note, "Defendants' counsel billed their clients at rates well within those expected for experienced commercial and/or patent counsel." (Dkt. # 374 at 9.)  Recently, a district court in Nevada found that hourly rates ranging from $425 to $250 were reasonable based on prevailing market rates for legal service in this community.  Eleanora J. Dietlein Trust v. Am. Home. Mortg. Inv. Corp., No. 3:11–CV–0719–LRH (VPC), 2015 WL 132644, at *1 (D. Nev. Jan. 9, 2015).  Similarly, another district court approved rates of $375 to $400 for attorneys with decades of litigation experience.  Marrocco v. Hill, 291 F.R.D. 586, 589 (D. Nev. 2013).  Finally, another district court approved billing rates of $300 per hour for partners and $260 per hour for associates based on the court's familiarity with attorney rates in Las Vegas.  Agarwal v. Or. Mut. Ins. Co., No. 2:11–cv–01384–LDG–NJK, 2013 WL 5882710, at *2 (D. Nev. Oct. 30, 2013).

Based on the attorneys' experience, the relative complexity of this case, and rates

recently approved in the District of Nevada, the Court finds that the requested

hourly rates are reasonable.

      B.    Lodestar Enhancement

      Defendants ask the Court to enhance their award by raising defense

counsel's rates to those charged by Plaintiffs' counsel in this case.  There is a

"strong presumption" that the lodestar figure represents a reasonable fee award.

Bywaters, 670 F.3d at 1229 (quoting City of Burlington v. Dague, 505 U.S. 557,

562 (1992)).  However, district courts have the discretion to adjust the lodestar

figure upward or downward based on certain considerations.  Id.  Adjustments "are

only proper in certain 'rare' and 'exceptional' cases, supported by both 'specific

evidence' on the record and detailed findings by the lower courts."  Id. (quoting Pa.

v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).  The

lodestar figure cannot be adjusted "based on a factor that is subsumed within the

lodestar calculation."  Id. at 1230 (quoting Perdue, 559 U.S. at 553).

      Defendants ask the Court to adjust the lodestar upward, stating that

such an enhancement "would be justified for the reasons stated . . . to merit an

award of fees pursuant to Section 285."  (Dkt. # 337 at 26.)  In other words,

Defendants argue that they are entitled to an enhancement because the Court found

this to be an "exceptional case" under § 285.  However, Defendants point the Court

28

to no authority supporting their argument, and the Court's own research has not revealed any such rule.

As explained in the Court's previous Order finding that this is an exceptional case under § 285, an "exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). The Court's finding of exceptionality was properly premised on Plaintiffs' conduct and choice to sue, not on defense counsel's effort in litigating this case. The purpose of the lodestar is to ensure adequate compensation, and Defendants are not entitled to additional compensation because Plaintiffs pursued a meritless case.

Furthermore, the Court finds that no enhancement is appropriate based on defense counsel's efforts because those efforts have already been subsumed within the lodestar calculation. Generally, "the novelty and complexity of a case . . . may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel." Perdue, 559 U.S. at 553 (internal quotation marks omitted). Furthermore, "the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a

29

prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" Id. (quoting Del. Valley, 478 U.S. at 566). Finally, an upward adjustment for results obtained is not permissible. Bywaters, 670 F.3d at 1230 (citing Perdue, 559 U.S. at 558). The Court thus declines to adjust the lodestar calculation.

C.    Brunzell Factors

Under Nevada law, courts may use "any method rationally designed to calculate a reasonable amount, so long as the requested amount is reviewed in light of the factors set forth in Brunzell v. Golden Gate National Bank." Haley, 273 P.3d at 860. To ensure that the awarded amount is appropriate under both § 285 and the licensing agreement, the Court reviews the award under the Brunzell factors. Those factors are:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

Brunzell, 455 P.2d 31, 33 (Nev. 1969).

Each of these factors is already subsumed into the lodestar analysis. The qualities of the advocate are reflected in the hourly rates. Del. Valley, 478

U.S. at 566 (noting that "considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate").  The character of the work to be done and the work actually performed are reflected in the number of hours billed.  See Perdue, 559 U.S. at 553 (noting that "the novelty and complexity of a case . . . are reflected in the number of billable hours recorded by counsel").  Finally, the result obtained is reflected in the fact that fees were awarded for work on all of the claims in this case.  See Blum, 465 U.S. at 900 (noting that "acknowledgement of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee").  The Court thus finds that the award is appropriate under the licensing agreement and Nevada law, and calculates the fee award as follows:

| Attorney | Hours | Blended Rate | Total |
|---|---|---|---|
| Mark A. Hutchinson | 13.9 | $268.19 | $3,727.00 |
| Michael K. Wall | 30.5 | $360.00 | $10,980.00 |
| Jacob A. Reynolds | 1221.4 | $275.62 | $336,642.00 |
| Philip A. Kantor | 854.5 | $361.71 | $309,081.00 |
| Brandon J. Trout | 30.4 | $95.00 | $2,888.00 |
| Nicholas Salerno | 22.3 | $200.00 | $4,460.00 |
| Thomas Ryan | 37.5 | $200.00 | $7,500.00 |
| Jessica Mann | 11.9 | $200.00 | $2,380.00 |
| Christopher A. Turtzo | 113.8 | $200.00 | $22,760.00 |
| Total | | | $700,418.00 |

31

D.   <u>Sanctions Awarded To Plaintiffs</u>

Finally, the Court notes that Defendants' award must be offset by sanctions levied against them in 2009 by Magistrate Judge Leavitt.  Judge Leavitt ordered Defendants to pay reasonable expenses, including attorneys' fees and costs, incurred by Plaintiffs in making various filings, conducting a discovery compliance deposition, and preparing for and participating in two discovery hearings.[11]  (Dkt. # 210 at 10.)  This Court affirmed that order, but ordered that the expenses be put on hold until the end of the case.  (Dkt. # 241, Ex. 1 at 12–13.)  The Court clearly noted that it was not vacating Judge Leavitt's sanctions award, but stated that the specifics of the award would be addressed at the conclusion of the case.[12]  (<u>Id.</u> at 15–16.)  Following Judge Leavitt's ruling, Plaintiffs submitted briefing requesting $133,039.50 in fees and $6,056.30 in costs, along with supporting affidavits and documentation.  (Dkt. # 212.)

Defendants have chosen not to dispute those amounts, but instead argue that Plaintiffs' request should not offset their own award because they were

---

[11] Specifically, Judge Leavitt ordered Defendants to pay reasonable expenses incurred by Plaintiffs in filing Dkts. ## 147, 150, 156, 157, 160, 173, 178, 188, 194, 195, and 196; conducting the discovery compliance deposition of Chris Piche on November 3, 2008; and preparing for and participating in the September 22, 2008 and March 2, 2009 discovery hearings.  (Dkt. # 210 at 10.)

[12] Ultimately, after reviewing further evidence not initially available to Judge Leavitt, the Court found that Defendants had produced a mirror image of the database requested by Plaintiffs as ordered by the Court.  (Dkt. # 311 at 25, <u>adopted by</u> Dkt. # 332.)

"exonerated from [Plaintiffs'] claims of obstruction" and successfully obtained

summary judgment on each of Plaintiffs' claims.  (Dkt. # 383 at 9–10.)  It is true

that Defendants were ultimately exonerated from Plaintiffs' claims of obstruction

involving the database produced by Defendants, but Judge Leavitt's order was

based on Defendants' failure to provide a number of documents and other materials

requested by Plaintiffs.  (See Dkt. # 210.)  The ultimate determination that the

database Defendants provided to Plaintiffs was not corrupt and Defendants'

eventual success on the merits does not bear on Defendants' other discovery

misconduct, and Defendants are still liable for the sanctions ordered by

Judge Leavitt.

Defendants also argue that Plaintiffs have not supported their

proposed setoff in accordance with LR 54-16(e), which requires an opposition to a

motion for attorneys' fees to "set forth the specific charges that are disputed and

state with reasonable particularity the basis for such opposition.  The opposition

shall further include affidavits to support any contested fact."  However, Plaintiffs

do not dispute Defendants' own charges in this section of their Opposition, but

rather argue that Defendants' charges should be offset by the sanctions levied

against them and held in abeyance until the end of the case.  Furthermore, Plaintiffs

provided the basis for their request and supporting affidavits in their original

statement of fees (Dkt. # 212), which Plaintiffs referenced in their Opposition and

to which Defendants have had access for over five years.  Had Defendants wanted, they could have disputed Plaintiffs' calculations in their Reply to Plaintiffs' Opposition.

Although Defendants made no objections to Plaintiffs' calculations, the Court reviews the calculations under the lodestar method.[13]  See Fischer v. SBJ-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).  As explained above, the Court determines a reasonable fee by first multiplying the number of hours expended on the litigation by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing Hensley, 461 U.S. at 433).

### 1.    Hours Reasonably Expended on Litigation

Reasonably expended time is generally time that "could reasonably have been billed to a private client."  Id. (citing Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008)).   Here, Plaintiffs claim that they spent 311.3 hours working on the filings, depositions, and hearings specified by Judge Leavitt. (Dkt. # 212, Exs. 1; 2.)  Defendants have not argued that this number is unreasonable.  Upon review of Plaintiffs' time entries, the Court finds that 308.4 of the hours billed were reasonable.  Hours expended on clerical tasks are generally

---

[13] Because the sanctions were issued in connection with a general discovery dispute and not the merits of the patent claim, Ninth Circuit law applies.  See DDB Techs., L.L.C. v. MBL Advanced Media, L.P., 517 F.3d 1284, 1292 (Fed. Cir. 2008) (noting that the Federal Circuit reviews discovery issues not unique to patent law for abuse of discretion, applying the law of the regional circuit).

considered overhead expenses which are already reflected in an attorney's hourly rate; as such, those hours should be deducted.  See Missouri v. Jenkins, 491 U.S. 247, 288 n.10 (1989); Hassen v. Astrue, No. 3:08–CV–742–PK, 2011 WL 5842771, at *4 (D. Or. Nov. 21, 2011) (excluding billing entries reflecting purely clerical tasks from the lodestar calculation); Yeager v. Bowlin, No. 2:08–102 WBS JMF, 2010 WL 2303273, at *8 (E.D. Cal. June 7, 2010) (same).  2.9 hours of Plaintiffs' time were devoted to purely clerical tasks,[14] and the Court deducts those from the lodestar calculation.

### 2.  Reasonable Hourly Rate

The Court next turns to the reasonableness of the rates charged by Plaintiffs' counsel.  Here, attorney Craig A. Marquiz requests an hourly rate of $400 (Dkt. # 212, Ex. A), while attorney Sid Leach's rate varied from $525 in 2007 to $575 in 2008 and $595 in 2009 (Dkt. # 212-3 ¶ 5).  "The prevailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount."  Gonzalez, 729 F.3d at 1205 (internal quotation marks omitted).  The "relevant community" is the forum in which the district court sits— here, the state of Nevada.  Id.  Within the relevant community, courts consider the

---

[14] Those tasks include electronic filing (1 hour on March 31, 2008—Marquiz), forwarding software to the IT department (0.10 hours on July 23, 2008—Leach), and delivering courtesy copies to the court (0.80 hours on July 29, 2008 and 1 hour on February 9, 2009—Marquiz).  (Dkt. # 212, Exs. 1, 2.)

35

"experience, skill, and reputation" of the attorney.  Id. at 1205–06.  The party

requesting fees "has the burden of producing satisfactory evidence that the rates he

request meet these standards."  Id. at 1206 (internal quotation omitted).

Ideally, a court should consider counsels' affidavits including

information about fee rates of other attorneys in similar practices, awards in

comparable cases, counsel's experience and reputation level, and market rates.  See

Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005).  In this case, Marquiz and Leach

provide scant evidence about the reasonableness of their rates.  Marquiz's affidavit

simply states that his rate "is reasonable and consistent with those rates charged by

practitioners in this District with similar complex commercial and intellectual

property/patent litigation experience."  (Dkt. # 212-2 ¶ 5.)  Leach provides the

Court with more detail about his education and more than 30 years of intellectual

property litigation (Dkt. # 212-3 ¶ 4), but neither attorney provides information

about rate fees of other attorneys or awards in comparable cases.  A rate of $400

per hour has been described as "at the top of the market," but has been found

reasonable in complex matters.  Marrocco v. Hill, 291 F.R.D. 586, 589 (D. Nev.

2013).  Furthermore, Defendants themselves describe $400 per hour as a

reasonable rate for local litigation counsel.  (See Dkt. # 337 at 26 (suggesting that

the Court look to Plaintiffs' counsel's rates for "an appropriate rate to charge").)

For this reason, and bearing in mind the complexity of this matter, the Court approves a rate of $400 per hour for Marquiz.

The Court further concludes that $400 per hour is also a reasonable rate for Leach.  In another recent patent infringement action in the District of Nevada, the court found that pro hac vice patent counsel were entitled only to $400 per hour where local counsel also specialized in complex intellectual property litigation.  Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd., No. 2:12–cv–00054–GMN–PAL, 2012 WL 2244262, at *9 (D. Nev. June 15, 2012). Because Marquiz stated that he focuses his practice on complex intellectual property and patent litigation, a rate of $400 per hour is reasonable as to both Marquiz and Leach.

### 3.   Lodestar Enhancement

Finally, the Court must determine whether an adjustment to the lodestar amount is warranted based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been accounted for in the lodestar calculations.  Fischer, 214 F.3d at 1119 (citation omitted).  Those factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the

> circumstances, (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the nature and length of the
> professional relationship with the client, and (12) awards in similar
> cases.

Kerr, 526 F.2d at 70.  Factors one through five have already been subsumed in the

lodestar calculation.  Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir.

1996).  The sixth factor may not be considered in the lodestar calculation.  See

Davis v. City & Cnty. of S.F., 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part

on other grounds, 984 F.2d 345 (9th Cir. 1993).  However, the lodestar amount is

presumptively reasonable, and the court should only adjust it in "rare and

exceptional" circumstances.  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d

1041, 1045 (9th Cir. 2000).  Plaintiffs have not argued for any adjustment based on

the Kerr factors, and upon independent review the Court determines that no

adjustment is warranted.  The Court thus declines to adjust the lodestar, and

calculates the reasonable fee as follows:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Craig Marquiz | 261.2 | $400 | $104,480.00 |
| Sid Leach | 47.2 | $400 | $18,880.00 |
| **Total** | | | $123,360.00 |

Additionally, Plaintiffs asked the Court to award $6,056.30 in costs.

(Dkt. # 212 at 2.)  These costs represent Leach's travel expenses to attend the

discovery hearing on March 2, 2009 (id., Ex. 2), as well as deposition transcripts

and videography expenses for Chris Piche's deposition (Dkt. # 212-2 ¶ 6).  Again, Defendants do not dispute these costs.  Judge Leavitt ordered Defendants to pay reasonable expenses incurred in conducting Piche's deposition and participating in the March 2, 2009 discovery hearing.  (Dkt. # 210 at 10.)  The Court finds these costs are reasonable, and awards the costs as requested.[15]

In sum, the Court finds that Defendants' award should be reduced by $129,416.30 to reflect the sanctions awarded to Plaintiffs earlier in the litigation. The total amount awarded to Defendants is therefore **$571,001.70 in attorneys' fees.**

III.    Costs

Defendants ask the Court to award them a total of $17,882.83 in costs. (Dkt. # 372 at 3.)  Rule 54 of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs— other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  An award of costs therefore involves a two-step inquiry.  The Court must first determine who is a "prevailing party" under Rule 54, and second, must determine "how much (if any) costs should be awarded to the prevailing party."  Shum v. Intel Corp., 629 F.3d 1360, 1366 (Fed. Cir. 2010); Ass'n of Mex.-

---

[15] Plaintiffs are allowed to recover costs for both deposition videography and transcripts.  See Nicolaus v. W. Side Transport, Inc., 185 F.R.D. 608, 612 n.2 (D. Nev. 1999) (allowing costs for video deposition and deposition transcript).

Am. Educators v. Cal., 231 F.3d 572, 593 (9th Cir. 2000) (noting that district courts have discretion in choosing to award costs under Rule 54(d)).  "Whether an award of costs is reasonable is determined under the law of the regional circuit." Shum, 629 F.3d at 1370.  Under Ninth Circuit law, there is a presumption in favor of awarding costs to the prevailing party.  Dawson v. City of Seattle, 435 F.3d 1054, 1070 (9th Cir. 2006).  To overcome this presumption, the losing party must establish a reason to deny costs.  Id.

There can be no question that Defendants are the "prevailing party" in this case, as the Court granted summary judgment in their favor on each of Plaintiffs' claims.  (Dkts. ## 143, 333.)  As for the amount of costs to be awarded, Plaintiffs do not contest the calculations proffered by Defendants.  Having reviewed Defendants' lists of advanced costs (Dkt. # 337, Exs. A; B; C), the Court finds those costs are reasonable.  For that reason, and because Plaintiffs do not dispute the amount, the Court awards Defendants **$17,882.83 in costs.**

IV.   Damages

The Court has already determined that Defendants are entitled to double damages under Section 6.8 of the licensing agreement.[16]  (Dkt. # 367 at 27.)

---

[16] Because the Court has already made this determination (Dkt. # 367 at 27), it does not address Plaintiffs' argument that Defendants are not entitled to any damages under the licensing agreement.  (Dkt. # 374 at 1–2.)  However, because the Court did not address which damages are recoverable, it does so below.

That section allows a prevailing party in a breach of contract dispute to recover its attorneys' fees, costs, and double damages.  (See supra Section I; Dkt. # 367 at 24.) Defendants claim that they are entitled to damages in the amount of $428,117.13, which totals $856,234.26 after "doubling" pursuant to the licensing agreement. (Dkt. # 372 at 3.)  The parties raise the following issues with respect to damages: (1) whether the expenses claimed as damages are recoverable under the law, and (2) whether damages should be apportioned for the breach of contract claim only.

      A.    Recoverable Damages

          Defendants "seek only their direct damages for outlays necessarily incurred to defend the action, such as experts, technicians, consultants, and resources of time and salaries of employees utilized to produce evidence, respond to discovery, support counsel and the like."  (Dkt. # 337 at 20–21.)  In other words, Defendants ask the Court to award as damages those costs of litigation not taxable under 28 U.S.C. § 1920.  The Court may not tax as costs under Rule 54(d) those expenses that are not authorized by statute or court rule.  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 301 (2006).  However, § 1920 "does not set maximum costs around which private parties may not contract."  Monsanto Co. v. David, 516 F.3d 1009, 1017 (Fed. Cir. 2008); United States v. Mink, 476 F.3d 558, 564 (8th Cir. 2007).  Thus, the parties had the right to contract for payment of costs other than those enumerated in § 1920.

41

The Court must therefore interpret the licensing agreement to determine whether "damages" include costs not taxable under Rule 54(d). Plaintiffs argue that "double damages" refers to damages sought as part of the proceeding to enforce contractual obligations, and that it was not intended to allow recovery for costs and expenses incurred as a result of the litigation that do not qualify as attorneys' fees or court costs.  (Dkt. # 374 at 2.)  Defendants counter that the provision clearly provides for the type of direct damages they now seek, and that the damages provision was intended to deter the parties from litigating unmeritorious claims.  (Dkt. # 383 at 19–20.)

The licensing agreement is governed by Nevada law.  (HGN Contract ¶ 6.3.)  In Nevada, contract interpretation is a question of law.  Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007).  In interpreting a contract, "the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself."  Id. (internal quotation marks omitted).  Contractual terms are given their "plain and ordinary meaning."  Traffic Control Servs. v. United Rentals, 87 P.3d 1054, 1058 (Nev. 2004).  When a contract is clear on its face, it "will be construed from the written language and enforced as written."  Ellison v. C.S.A.A., 797 P.2d 975, 977 (Nev. 1990).

Here, the licensing agreement provides that a prevailing party "shall recover its reasonable attorney's fees, court costs and double damages."  (HGN Contract ¶ 6.8.)  The agreement does not specify which types of damages are either allowed or disallowed under its terms.  The Court therefore gives the word its ordinary meaning, which is compensation for loss caused by another.  See Arnesano v. State ex rel. Dept. of Transp., 942 P.2d 139, 143 (Nev. 1997), abrogated on other grounds by Martinez v. Maruszczak, 168 P.3d 720 (Nev. 2007); see also Black's Law Dictionary 471 (10th ed. 2014) (defining "damages" as "[m]oney claimed by . . . a person as compensation for loss or injury").  Here, Defendants ask to be compensated for financial loss incurred as a result of Plaintiffs' decision to file a meritless lawsuit.  The Court finds no reason that the damages claimed by Defendants should be excluded from the licensing agreement.

B.     Apportionment for Breach of Contract Claim

The amount requested by Defendants represents damages for the entirety of defending the suit—not just damages incurred on the breach of contract claim.  Defendants assert that under both § 285 and Nevada law, the Court may award damages for the entire case because those damages incurred on the breach of contract claim cannot reasonably be apportioned from those incurred in the rest of the case.  (Dkt. # 337 at 18–20.)  Plaintiffs do not make any segregation or apportionment argument with respect to damages.  As explained above, under

43

Nevada law, courts need not apportion costs where the claims for which costs are proper are "inextricably intertwined" with the claims for which costs are disallowed.  Mayfield, 184 P.3d at 369.  The Court finds that because the requested damages are litigation-related expenses, this rationale applies to the damages claimed in this case as well.  For the reasons explained supra in Section I, the Court finds it is impracticable to apportion only those costs associated with the breach of contract claim.

Plaintiffs do not dispute the amount of damages claimed by Defendants, although they were certainly given the opportunity to do so when the Court ordered supplemental briefing on the reasonableness of the requested fees, costs, and damages.  (See Dkt. # 367 at 29 (ordering Plaintiffs to respond to Defendants' calculations).)  A party seeking damages has the burden of proving both the fact of the damages and the amount thereof.  Mort Wallin of Lake Tahoe, Inc. v. Comm. Cabinet Co., Inc., 784 P.2d 954, 955 (Nev. 1989).  The amount need not be proven with mathematical certainty, but the party requesting damages must provide an evidentiary basis for determining a "reasonably accurate" amount of damages.  Id.

In the absence of any objections, the Court finds that the damages requested, with one exception, are reasonable and are properly supported by the declarations of Chris Piche (Dkt. # 337, Ex. E) and Philip Kantor (id., Ex. B-1) and

44

other receipts, invoices, and checks (id., Exs. 1–5).  With respect to the travel

expenses, however, Defendants have produced a simple table of average airfare,

average hotel, average taxi costs, and average meal expenses.  (Id., Ex. 3.)  Without

further support or documentation such as itineraries or receipts, the Court finds that

this chart provides a wholly inadequate basis for determining the amount of

damages.  Lastly, the Court finds that the damage award must be doubled pursuant

to the terms of the licensing agreement.  Therefore, the Court awards Defendants

**$772,534.26 in damages.**

V.     Fees and Costs Against Counsel Pursuant to 28 U.S.C. § 1927 and the
       Court's Inherent Powers

        Finally, Defendants ask the Court to award attorneys' fees and costs

against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent

powers.  (Dkt. # 391.)  Although Defendants filed their Motion for Attorney Fees

and Costs Against Counsel separately from their Motion for Attorney Fees and

Costs under § 285, they do not request any additional award in the Motion Against

Counsel.  (See id. at 27.)  Rather, Defendants use § 1927 and the Court's inherent

powers as an additional basis for awarding the full amount of attorneys' fees and

costs requested in their first fee motion.

        Under 28 U.S.C. § 1927, an attorney "who so multiplies the

proceedings in any case unreasonably and vexatiously may be required by the court

to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Pursuant to this section, courts have the authority "to hold attorneys personally liable for excessive costs for unreasonably multiplying proceedings."  Gadda v. Ashcroft, 377 F.3d 934, 943 n.4 (9th Cir. 2004).[17]  Section 1927 sanctions must be supported by a finding of subjective bad faith.  Kohler v. Flava Enters., Inc., 779 F.3d 1016, 1020 (9th Cir. 2015).  Additionally, courts also possess the inherent authority to "award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons."  Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2004) (internal quotation marks omitted); see also Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991).

Defendants ask the Court to award fees and costs under § 1927 and the Court's inherent powers on the grounds that (1) such an award is supported by the Court's finding that this is an "exceptional" case; (2) Plaintiffs' counsel brought this action in bad faith; and (3) Plaintiffs' counsel acted in bad faith in multiple instances during the course of litigation.  (See Dkt. # 391.)  Plaintiffs' counsel dispute each of these arguments, and add that the Court should deny Defendants' motion as untimely.  (Dkt. # 397 at 15; Dkt. # 398 at 7.)

---

[17] The Federal Circuit applies the law of the regional circuit to sanctions under § 1927.  Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1141 (Fed. Cir. 2005).

Defendants filed their Motion on January 19, 2015, nearly fifteen months after the Court granted Defendants' motion for summary judgment on September 30, 2013.  Section 1927 itself does not specify the time in which a motion for fees and costs against counsel must be made.  Under Local Rule 54-16, a motion for attorneys' fees "shall be filed with the Court and served within fourteen (14) days after entry of the final judgment or other order disposing of the action."  Nev. Local R. 54-16.  The Local Rules also provide that they are meant to supplement the Federal Rules of Civil Procedure, and that they must be construed so as to be consistent with the Federal Rules.  Nev. Local R. IA 2-1.

Rule 54(d) of the Federal Rules of Civil Procedure governs motions for attorneys' fees, including the timing of fee motions.  Under that rule, motions for attorneys' fees must be filed no later than fourteen days after the entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).  However, the Rule specifically exempts claims for sanctions under § 1927 from its provisions.  Fed. R. Civ. P. 54(d)(2)(E).  Courts are under the obligation "to construe local rules so that they do not conflict with the federal rules."  Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995).  If a local rule conflicts with a federal rule, the local rule "cannot be enforced."  Pradier v. Elespuru, 641 F.2d 808, 810 (9th Cir. 1981).  Thus, even if Local Rule 54-16 purported to limit the period in which to file a motion for fees under § 1927, the Court would not be permitted to enforce the local rule.  Because Rule 54(d) does

47

not apply to claims made under § 1927, Local Rule 54-16 does not render the motion untimely.

However, the Court notes that Defendants filed their Motion fifteen months after final judgment was entered, fourteen months after filing their § 285 fee motion, and seven months after the Federal Circuit affirmed the judgment.  As a general matter, it is widely agreed in the Ninth Circuit that "a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed." MGA Entm't, Inc. v. Nat'l Prods. Ltd., No. CV 10–07083 JAK (SSx), 2012 WL 4052023, at *4 (C.D. Cal. Sept. 14, 2012); see also Crawford v. Japan Airlines, No. 03–00451 LEK–KSC, 2013 WL 2420715, at *9 (D. Haw. 2013); Tourgeman v. Collins Fin. Servs., Inc., No. 08cv1392–JLS(NLS), 2012 WL 28289, at *3 (S.D. Cal. Jan. 5, 2012).  Though the Ninth Circuit has not commented on the issue of timeliness in the context of § 1927 sanctions, other courts have held that § 1927 motions must be made within a "reasonable time" or "as expeditiously as possible" after the entry of judgment, and should not be "unnecessarily or unreasonably delayed." See, e.g., In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 102 (3d Cir. 2008); Steinert v. Winn Grp., Inc., 440 F.3d 1214, 1223 (10th Cir. 2006); Overnite Transp. Co. v. Chicago Indus. Tire Co., 697 F.2d 789, 793 (7th Cir. 1983).  In Overnite, the Seventh Circuit found that a motion filed eight months after dismissal and two months after affirmance was not filed

within a reasonable time.  697 F.2d at 793.  Although there has been little other commentary on what constitutes a "reasonable time," the Court finds that fifteen months after summary judgment cannot be considered reasonable by any standard. This is especially so because Defendants have provided the Court with no explanation as to why they waited so long to file their Motion.  Because the Motion was not filed within a reasonable time, and because Defendants have not provided any reason for their lack of diligence and the unreasonable delay in filing the Motion, the Court **DENIES** Defendants' Motion for Costs and Fees Against Counsel.

<u>CONCLUSION</u>

For the foregoing reasons, the Court awards Defendants $571,001.70 in attorneys' fees, $17,882.83 in costs, and $772,534.26 in damages, for a total award of $1,361,418.79 against Plaintiffs.  The Court **DENIES** Defendants' Motion for Attorney Fees and Costs Against Counsel Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers (Dkt. # 391).

**IT IS SO ORDERED.**

**DATED:** Las Vegas, Nevada, April 16, 2015.

_____
David Alan Ezra
Senior United States District Judge

49